Leon Levy.    Ex Parte.

6. Practice: Judgment against only part of defendants jointly and severally liable.

---

LEON LEVY.    EX PARTE.

1.  APPEAL : *From County Court's refusal of liquor license.*
    Upon the refusal of a County Court to grant license to sell liquor the applicant may appeal to the Circuit Court.

2.  LIQUOR : *Discretion of County Court in granting license to sell.*
    The County court has the discretion to grant or entirely refuse license to sell liquor at all, in township or city wards, where the county and township, or ward, have voted for license : but if it license some it cannot arbitrarily refuse other applicants in the same township or ward who are of good moral character and comply with the requirements of the statute ; and when some are refused, the Court should give its reasons, so that an appellate court may see whether a sound legal discretion has been exercised.

Leon Levy.   Ex Parte.

APPEAL from *Jefferson* Circuit Court.
Hon. J. A. WILLIAMS, Circuit Judge.

*N. T. White, H. King White, M. L. Bell, and U. M. & G. B. Rose* for appellants.

There can be no doubt as to the right of appeal from the County Court. That is a constitutional right which the legislature could not take away, even if it wished to do so.

*Simpson v. Simpson,* 25 *Ark.,* 487; *O'Bannon v. Ragan,* 30 *Id.,* 181; *Anthony ex parte, Id.,* 358; *Pope v. Ashley* 13 *Id.;* 286.

Although the legislature cannot take away the right, yet it may regulate it. This has been done by an act which declares " that appeals shall be granted as a matter of right to the Circuit Court from all final orders and judgments of the County Court in this State," and which provides a method of taking such appeal. *Act.* 1883, *p.* 49.

Any adjudication that affects a pecuniary or property right may be appealed from; as, for instance, an assessment of property for taxation. *Randle v. Williams,* 18 *Ark.,* 328.

If, in any case where the legislature has failed to prescribe the method of taking an appeal from the County Court, the cause may be taken to the Circuit Court by certiorari.

*Lindsay v. Lindley,* 20 *Ark.* 581; *Floyd v. Gilbreath,* 27 *Id.,* 683;

On the appeal from the County Court the cause is tried *de novo* in the Circuit Court. *Acts* 1883, *p.* 50, *Sec.* 6.

As the right to an appeal undoubtedly exists, it is a contradiction of terms to say that the Circuit Court, on the appeal, is bound by the decision of the court below.

If the Circuit Court has jurisdiction of the case at all, it must have jurisdiction to decide it.   " Where a Court has jurisdiction, it has a right to decide any question which occurs in the cause."   *Peck v. Jenness,* 7 *Howard,* 624.

In our opinion the court below wholly misconceived the decision made in *Whittington ex parte,* 34 *Ark.,* 397. In that case it was only decided that as the act of May 30, 1874, (*Acts* 1874, *p.* 49) provided that where the majority of votes is cast for license, " it shall be lawful for the Board of Supervisors to grant licenses," it was not incumbent on the Board to grant licenses as a matter of duty, when there had been a vote for license ; that it is still a matter of discretion in the tribunal, which cannot be controlled by mandamus.

## I.

The act does not give any power to discriminate between persons equally capable of receiving license.   According to its real meaning, and the construction placed on it in the *Whittington* case, the court has only a discretion " to grant licenses," or not to grant them.   If the legislature had intended that the County Court should have the right to grant favors to some persons, and to refuse them to others, not laboring under any disability, certainly such an unusual intention would have been clearly expressed.

## II.

We deny that under our Constitution the legislature has the power to authorize the County Judge to distribute a legally recognized right to pursue any particular calling exclusively among his favorites.   The proposition is at variance with the most fundamental conceptions of our form of government.   The sale of ardent spirits may be proscribed ; but, if it is legalized, it stands on the

same basis as any other calling, and no monopoly in it can be created.

That Constitution says ; " Perpetuities and monopolies are contrary to the genius of a Republic, and shall not be allowed." *Constitution of* 1874, *Art.* 11, *Sec.* 19.

" The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, *upon the same terms*, shall not *equally* belong to all citizens.

*Id.*, *Art.* 11, *Sec.*, 19.

A monopoly is defined as " The abuse of free commerce, by which one *or more* individuals have procured the advantage of selling alone all the particular kind of merchandise.    A monopoly is also an institution or allowance by a grant from the sovereign power of the State, by commission, letters patent or otherwise, to any person or corporation, by which the exclusive right of buying, selling, making, working, or using anything is given."

*Bouvier's Law Dictionary.*

It is obvious that the legislature could not have granted such an exclusive privilege to any eight persons in the County of Jefferson ; it is equally obvious that what the legislature cannot do directly, it cannot do indirectly. We do not deny but that the legislature might, for the purpose of promoting temperance, prescribe that the sale of spirits should be made by certain officials with a view to limit its use to medical purposes alone.    But this is not a case of that kind.    The eight persons belonging to the privileged class have an unlimited power of sale. They are simply carrying on a well recognized branch of commerce, and other citizens are forbidden to interfere with their traffic, or to exercise the privileges which they enjoy, not only *on the same terms*, but on any terms whatever.    The case is, therefore, one of monopoly, pure and simple, without a single mitigating or doubtful feature.

See in point 25 *Conn.* 19; 11 *Coke* 84; 7 *Paige Chy* 261; 16 *Wall* 102; 46 *Ill.* 396; 18 *Ohio St.* 293; *Cooley Const. Lim* 390; *Ib.* 391-2-3.

*W. E. Hemingway, Amicus Curiae.*

We submit that the County Court had the right to license only so many saloons as it thought necessary to carry on the trade; that appellant has been restrained of no liberty he previously had, and hindered in no trade; that the action of the County Court has taken nothing from any one; was in derogation of no individual rights, and not subject to the objection of monopoly.

The law invests the County Court with full discretion to grant or refuse each application for license, considering the fitness of the traffic and of the person to engage in it, and the demands and convenience of the people in the loclity in which it is to be conducted.

The appetites of man demand liquor; experience demonstrates that 'tis best for him and the public that he buy it from a saloon regulated by law. Experience has further shown that the number of saloons should not be greater than is necessary to supply the absolute demand for drink. It should never be exceeded; what it is, when it would be exceeded, must be determined by the County Judge from his knowledge of the drinking habits of the community, and its demands upon the trade.

*Sec.* 5718 *Gantt's Dig.*; *Acts* '74 *p.* 48; *Acts* 1879, *p.* 34; *Acts* 1881, *p.* 133; *Whittington Ex Parte,* 34 *Ark.,* 394-6-7 &c.; 39 *Md.,* 524; 5 *Iredell,* 327; 18 *B. Mon.* 15; 11 *Gratt* 655; 2 *Duer* 618; 1 *Hill* 655; 8 *Mod.* 309; 2 *Jones N. C.,* 288.

Saloons are not permitted for the benefit of the licensee, but for public convenience. 24 *Peck.* 358; 32 *Iowa,* 249; No one has a right to a license. 34 *Ark.,* 397; 18 *B. Mon.,* 15; 39 *Mo.,* 524; 18 *Wall,* 136.

Leon Levy. Ex Parte.

As to the power of the legislature to pass the act as a police regulation, see 11 *Otto* 819; *Best. Stat. Crimes, Sec.* 995; 16 *Wall,* 65, 102; 18 *Wall,* 136; 24 *Pick,* 358; 40 *Ind.* 315; 32 *Iowa,* 249, &c.

EAKIN, J. Leon Levy, under the Act of March 8th, 1879, as amended, applied to the County Court of Jefferson county for a license to retail liquors in the city of Pine Bluff, accompanying his petition with a sufficient bond, conditioned as required by law. On the 7th day of January 1884, the petition was rejected, and he appealed from the order to the Circuit Court.

The matter was there heard upon a motion to dismiss the appeal for want of jurisdiction. The court seems to have treated the appeal as a petition for mandamus, which it overruled and dismissed. Levy took a bill of exceptions and appealed here.

The bill of exceptions contains a statement of the facts, with the motion for a new trial, and the order overruling the same.

It appeared that at the last preceding general election, a majority of the voters of the county, and of each ward in Pine Bluff, voted in favor of liquor licenses; that the application of petitioner for a license complied in every respect with the law; that he was himself competent to receive it, and of good moral character; and that the bond was good and sufficient; that at the same term of the County Court seventeen other citizens made, separately, similar applications; that the county court granted the petitions of eight of them and refused the ten others, including that of appellant; and that those whose applications were rejected were citizens of the county, with as good moral character as those whose applications were granted.

Upon these facts the Circuit Judge declared the law to be:
"That under the laws of this State, the County Court is

clothed with the exclusive jurisdiction to grant or refuse license for the keeping of dram shops, or drinking saloons; and under that discretion, it has the power and authority to grant to one or more applicants license to sell liquor, and refuse it to all others; even if those refused are, in all respects, equal to those to whom it grants license; and when that discretion has been exercised by the County Court, no other court has the power or jurisdiction to enquire into that discretion on an appeal or otherwise."

Whereupon the court refused to disturb the order of the County Court.

It will be observed that the effect of the declarations of law upon which the court acted, is simply a disclaimer and negation of jurisdiction to entertain the appeal; and does not touch the question of abuse or mistake in the exercise of the discretion.   In view however of the public importance of the subject matter we deem it expedient to consider all the questions which the attorneys have meant to make, and which they have considered as involved in the appeal.

The Act of March 8th, 1879 (p. 34 of Pampt. Acts), as amended March 19th, 1881, after prohibiting, generally, the sale of liquors without license, authorizes and empowers the County Courts to grant licenses to keep dram shops, as follows:

By Section 7, as amended, (See Acts 1881, p. 132) it is provided that the question shall at each general election be submitted to the people of each county, as to whether or not license shall be granted for the sale of liquors for any purpose in the county.   By the 9th Section, as amended, it is provided that if the vote of the county be not for license, none shall be granted in the county until after the next general election.   But if the vote be *for license,* " then it shall be lawful for the County Court of such county, to grant licenses for the purposes aforesaid, to persons of good moral character,

Leon Levy. Ex Parte

over the age of 21 years, within any township, town, or ward of a city, in such county, where the majority of the vote has been for license."

This court has held under a similar statute, (*Whittington ex parte* 34 *Ark.*, 39%.) that where the vote of the township or ward, may be in favor of license, the County Court is not bound thereby to grant it, but may still exercise a discretion in determining whether any licenses should be granted in the township or ward, and who may be fit subjects of the grant. In determining these questions or similar ones, the court acts as a court, discharging the proper functions of a court, invested with police powers, and making orders affecting the general good of the citizens, with regard to their local concerns. This is within the ambit of their constitutional purpose. It is not like cases where occasional duties of a political or ministerial nature are imposed upon particular boards or officers. (*See Const.*, 1874; *Art VII, Sec.* 28.)

" The Circuit Court shall exercise a superintending control and appellate jurisdiction over County," and other designated courts. *Ib. Sec.* 14.

By the 1st Section of Act of Feb. 20th, 1883 (p. 49 Pamph. Acts) it is provided that "appeals shall be granted as a matter of right, to the Circuit Court, from all final orders and judgments of the County Courts in this State." By Section 6 it is provided that the Circuit Court shall proceed to try all such appeals *de novo*.

1. APPEAL: From County Courts refusal of liquor license.

We think it clear that an appeal lay in this case from the County to the Circuit Court; and that the Hon. Circuit Judge erred in holding that no other court had power or jurisdiction to enquire into the exercise of the discretion of the County Court on appeal; and in dismissing the cause for want of jurisdiction.

It might suffice, in this case, and it is as far as this court ordinarily goes, to remand the matter to the Circuit Court

4——43

Leon Levy.   Ex Parte.

with directions to hear and determine the cause upon its merits, considering whether or not the County Court had transcended or abused any discretion it might have in the matter.   Yet, in view of the public convenience we will consider the merits, for the purpose of determining, once for all, the only remaining point in the case, which is this :

2. Discretion of County Courts in granting liquor license

Assuming as settled that the County Court had the right under the popular vote to issue any number of licenses in the city—and the discretion to decline to issue any licenses at all ; does it follow that it had the discretion, or properly exercised it, after accepting the privilege to issue liquor licenses, and adopting the policy of doing so, to discriminate between individuals equally meritorious and, without apparent reason for the distinction, to grant license to some, and refuse it to others ?

This court has held in the case of *Lowman ex parte*, 42 *Ark.*, 370 that the refusal of the Circuit Court to approve a sheriff's bond which appeared proper in form and sufficient in surety, and where upon the record no reason appeared, nor was suggested, for the refusal, beyond the will of the judge, or outside of his private knowledge, was an abuse of his sound judicial discretion.

This proceeds upon the ground that when a court refuses to do an act which is in itself proper to be done, but the doing of which, in a particular instance, is in the discretion of the court, if the refusal affects the rights or interests of the public or of individuals, it must appear to have some rational basis.   If it appears to be merely arbitrary, it will be considered an abuse.

There is no vested right in any one to have a liquor license, nor such public necessity, in his case, as would bring into play the decision in *Lowman ex parte*, regarding the sheriff's bond.   The question must be determined by the constitution and by the intent of the legislature.

First, then, does the construction of the act, which confers this privilege of discrimination violate any of the provisions of the constitution? This question has never been before us. The decision in *Whittington ex parte*, 34 *Ark.*, 394, went merely to the extent that the County Court had the discretion, notwithstanding the vote of any township or ward, to refuse to grant any liquor licenses to any one whatever; that is to say, to refuse to adopt the policy of granting them. There is an allusion by the Judge delivering the opinion, to a former act, (Gantt's Dig. Sec. 5718) long since repealed, which left it in the county court to determine both the fitness of the traffic and of the persons to exercise it, and a remark that there is nothing to contravene this in the act then in question. But this expression was made with reference to the point before the court in the case then in judgment ; and is to be confined to that in its application. That point was the discretion of the County Court to refuse license to any and everybody. The question of discrimination was not raised. This is a case of first impression.

Sec. 19, Art II Const. of Ark., declares that " Perpetuities and monopolies are contrary to the genius of a republic and shall not be allowed." The monopolies which in England became so odious as to excite general opposition, and and infuse a detestation which has been transmitted to the free States of America, were in the nature of exclusive privileges of trade, granted to favorites or purchasers from the crown, for the enrichment of individuals, at the cost of the public. They were supported by no considerations of public good. They enabled a few to oppress the community by undue charges for goods or services. The memory, and historical traditions, of abuses resulting from this practice, has left the impression that they are dangerous to Liberty, and it is this kind of monopoly, against which the constitutional provision is directed. Not all the States have felt this ap-

prehension.   There is no indication of it in the Federal Con-
stitution.   It has not been most usual, I think, for State
constitutions to inhibit monopolies, in governments whose
representatives come directly from the people, and are re-
sponsible to them..  Mr. Bouvier, in his Law Dictionary,
enumerates only three States in which monopolies were for-
bidden by their constitutions, Maryland, North Carolina and
Tennessee.  He overlooked our state and may have overlooked
some others, but it is quite apparent that a great many of the
States have not considered such prohibitions necessary.   It
is to be regretted that the States which have set up the in-
hibition, have not, with it, given us some more satisfactory
definition of a monopoly than can de derived from its literal
meaning, the " sole power to sell," or than can be gathered
from the oppressive measures of the Tudors and Stuarts.
Evidently, powers to sell, to be exercised by some, and not
by all, cannot be wholly prohibited, because that would ex-
clude the power to sell under license.   It is no justification
of a monopoly that the right has been paid for.   Most mo-
nopolies were doubtless granted on a *quid pro quo* basis.
Even now, I do not think a manifest and palpable monopoly,
such as a sole power to make and import farm wagons, could
be sustained on the ground that the beneficiary had paid the
government a compensation.   We are left to conclude that
the monopolies meant were such as, in England, had been
found detrimental and offensive ; such as were directed to
the aggrandizement of the wealth of the few ; and which to
that end, restrained the subject from the exercise of occupa-
tions, which otherwise would have been proper.

There are some trades and occupations confessedly danger-
ous to the public, either as to health, or safety, or morals.
Government has the inherent power to regulate or prohibit
them.   It is not presumed that constitutions meant to pro-
hibit this salutary exercise of power.   The retail of liquors

is one of them. As lawful as any other, when permitted, and as fully entitled to protection, it is nevertheless in questions of giving or withholding permission, considered as dangerous.

If the legislature, recognizing this danger, had prohibited the retail of liquors generally, making it unlawful to any one to keep a dram shop, and had at the same time recognized a certain public necessity or convenience to be met by the existence of a limited number of places for such houses; and had provided that the assent of the people having been first obtained, the County Court might grant such number of licenses as it might deem best; it would be just such a statute as the Jefferson Court construed this to be. Although private profits might attend the privilege, they would not be in the contemplation of the law, nor within its purposes. The intention of such a law would be the relaxation of a general prohibition for the benefit of the public in certain localities upon the expression of the desire of a majority of the inhabitants of those localities, and to do so only to the extent which the proper local tribunal might deem best. Although such a selection might result in an exclusive power to sell in the hands of those selected, we think it could not fairly be considered a monopoly in the sense of the constitutional prohibition, but rather a police regulation for the public good. This view of a definition of a monopoly is sustained by the court in *The Slaughter House Cases*, 16 *Wallace*. See remarks of Mr. Justice Miller on page 65, which are addressed to this point.

If the construction of the act adopted by the County Court gives it an unconstitutional effect, it must, we think, result from some other clause. There is another which appellant relies on with much confidence, and which we confess, presents greater difficulty.

Sec. 18 of same article provides that " The General As-

sembly shall not grant to any citizen nor class of citizens, privileges or immunities which, *upon the same terms,* shall not equally belong to all citizens."

It must be conceded that the legislature could not empower the County Courts to do that, which the Constitution prohibits the legislature from effecting. Of course there are things which, on account of jurisdiction, must be done by some special court, like the probate of a will, or the appointment of a guardian, and which the legislature could not do directly; and in such cases, an inhibition against the legislature would not necessarily affect the court. But where a *policy* is forbidden it affects all branches of government, and this clause must be taken to forbid not only an act of the legislature, but any authorization whatever by the legislature. In other words, if this power of selection, and of limiting the number of dram shops, be, in its effects, in the constitutional sense, a grant to some citizens, of privileges or immunities, denied to other citizens upon the same terms, then the County Court has misconstrued the act, and given it a meaning which arrays it against the constitution.

A privilege (*privilegium* in the old law) is quite a different thing from a monopoly. It is, according to Burrell, some peculiar right or favor granted by law contrary to the general rule—an exemption or immunity from some general duty or burden—a right peculiar to some individual or body—a personal benefit or favor. (*See Bur. Law Dic. in verb*). An immunity is much the same. (*Ib. in verb.*)

Where the retailing of liquors is prohibited by the general law, and some persons may sell it, obtaining license therefor, and be exempt from prosecution, it is difficult to distinguish that from a privilege or immunity. It is expressly held to be a privilege in *Austin v. State,* 10 *Mo.*, 591, although no such constitutional provision as the one

under discussion, was then urged. If it be such, it follows, here, that if granted to one it must be granted to all others upon the same terms. That is to say, those who make application, tender the license fee and bond, propose to sell in the township and ward, and as to whom there can be shown no unfitness as to moral character or otherwise. In other words, it would seem plainly to preclude the County Court from making any arbitrary discrimination. Yet the authorities are conflicting.

In Illinois it is settled that such discriminations cannot be made. In *City of East St. Louis v. Wehrung*, 46 *Ill.*, 392, it was held that the court could not discriminate between persons, charging some a higher rate of license than others, exercising the same calling, under the same circumstances, and with equal facilities for profit, although an ordinance of a city might discriminate between localities. A discrimination as to persons, without reasons, was considered an abuse of discretion.

A late case, *Zanone v. Mound City*, 103 *Ill.*, 552, is one very much like this. A city ordinance provided for the issuance of dram shop license upon certain conditions. Zanoni brought himself within the conditions, yet was refused license. He applied for a mandamus, and showed, as is done here, that he was in every respect a suitable person, and that licenses had been issued to others. The defendants, the municipal authorities, as in this case, showed no excuse, justification or explanation of their action. The court conceded that the authorities might exercise a *sound* discretion, and refuse a license to *unfit* persons, but could not exercise an arbitrary discrimination. The mandamus was ordered. The court says that, " Equality before the law is a fundamental principle of our institutions, and no reason is perceived why applicants for a license to keep a dram shop, who are suit-

able persons to be licensed, should not stand on an equality before the law. Captious discriminations among men of that tráde, are as obnoxious as would be such discriminations in regard to other trades." The court concluded also that the city authorities might *limit the number* of dram shop keepers to be licensed, but said that in such case *to avoid favoritism and monopoly* some provision should be made for a fair competition. *The People v. Village of Crotty*, 93 *Ill.*, 180, is cited as sustaining this view of the law; although, on its own grounds, the mandamus, in that case, was refused.

The case of *Zanone v. Mound City, supra,* was decided by a divided court, there being three dissenting members. Yet in connection with the cases cited, it may be considered as settling the law in Illinois, that such arbitrary discriminations are not valid.

In Kentucky, although no similar constitutional restriction concerning equality of privileges and immunities was discussed, yet in the cases of the *City of Louisville v. Divers Parties*, 18 *B. Monroe, p.* 15, it was held, on general principles, that a discretion in a County Court to grant or refuse liquor licenses was not an arbitrary one, but would be controlled. It was held that there might be a general refusal of every one, without any question of reason, just as we have held here; and the City Council might decide *how many taverns* licensed to sell liquor were required in the city. This is an authority, certainly, against an unlimited and arbitrary discretion, such as the courts may not control.

The courts in North Carolina have taken about the same view of the general question of discretion, which has obtained in Kentucky. *Judge Ruffin* in 5 *Iredell* 327, says: that the County Courts are not compelled to issue licenses to every qualified candidate, but that the partic-

ular license is within the sound legal discretion of the court, holding, however, that the reasons for the refusal should appear. *Att'y Gen'l v. Justices of Guilford*, (*ubi supra*.

In other words, the power to give or refuse is held not to be absolute. The learned Chief Justice quotes, approvingly, the case of *Young v. Pitts in 1st Burrows*, 556, which arose under the act of 5 and 6 Ed. 6., prohibiting ale houses without a license from two Justices of the Peace. Lord MANSFIELD said: " It must not be permitted to them to exercise an arbitrary and uncontrolled power over the rights of the people ; that if they had no *reasonable* objection against the applicant they *ought* to license him, and if they had *they ought to give it.*" This is very hard common sense, to say the least of it, and is independent of constitutional restrictions.

In Missouri the courts seem to favor the arbitrary power of discrimination. *State ex Rel. v. Holt Co.*, 39 *Mo.* 524. The matter there is not put upon constitutional grounds, and the court refers to *Austin v. State in* 10 *Mo.*, which treats a license as a privilege.

The courts of Virginia have reached the conclusion that the discretion of the County Courts in giving or refusing license in a particular case cannot be controlled by any revisory process, but refuse to declare that they have an arbitrary discretion, which they can exercise at pleasure without responsibility. The control in this State is given by appeal, and the authority of the Virginia cases seems scarcely applicable, upon the main point now discussed, although they had in their constitution a clause to the effect that " no man or set of men, are entitled to exclusive or separate emoluments or privileges." The court, however, has not seemed to rely upon this

clause in the case which seems to have settled the practice in that state.  *Yeager ex parte*, 11 *Grattan* 674.

In the case of the *Commonwealth v. Blackington*, 24 *Pickering*, 352, the Supreme Court of Massachusetts held directly, that a law giving to County Commissioners the right, at their option, to license as many persons as they should think good for the public, was not in conflict with the clause of their Bill of Rights, which is as follows: " No man, nor corporation, or association of men, have any other title to obtain advantages, or particular and exclusive privileges distinct from those of the community, than what rises from the consideration of services rendered to the public." The court said they might put the decision on the ground that the law required of licensed persons, some burdens for the accommodation of the public, for which the exclusive privilege might be perhaps a consideration, as in case of ferries; but preferred to put the decision on the broader ground that the privilege was not conferred as a privilege to the vendor, or with a view to give him an exclusive right. That the exclusive right is collateral to the peace and good order, and security and morals of the community—and that when these are the obvious purposes of a law, and the exclusive privilege the means, the Constitution is not violated.

The reasoning is not very satisfactory, nor easily grasped. What shall be the exact limit to which exclusive privileges may extend, if they be good in some cases and not in others? The jurisprudence of Massachusetts has its roots in a time when the worthy forefathers of the generation rendering this opinion, were extremely careful to fortify against all arbitrary powers and abuses of the crown, and at the same time very prone to hold up the hands of their own home rulers in the col-

ony, in very arbitrary measures to coerce good conduct at home. The same principles were not always easily adjusted for both purposes. So far as it goes, however, and the court of Massachusetts goes far, as authority, it sustains the action of the County Court.

In the case of *Blair et al v. Kilpatrick*, 40 *Ind.*, 315, it was held that a similar provision of the Constitution had no reference to liquor lincenses. In that case the distinction made by the law, was between males and females, and to that, it is obvious the constitutional provision would not apply. It is intimated, however, that if a distinction, as to this privilege, should be attempted between a white man and a black one, it might alter the case.

It has been held in Georgia that the court, under their law, which in terms, however, is more mandatory than ours, has no right to withhold license from any one applying and bringing himself within the requirements of the law. *State v. Justices of Morgan Co.*, 15 *Ga.*, 408.

In Nebraska it seems to be held that courts have unlimited and uncontrolled discretion as to each license applied for, but no constitutional question was made. *State v. Cass Co. Commr's*, 12 *Nebraska* 54. None could have been well made, as their constitution prohibits only *irrevocable* grants of privileges and immunities.

So in Connecticut where a like discretion has been upheld (*Butters v. Co. Comr's*, 49 *Con.*, 479.) no constitutional question was made, as their constitution seems only to prohibit hereditary privileges.

In *Mayor &c., of Hudson v. Thorne*, 7 *Paige Chancery Rep.*, 261, Chancellor Walworth, upon equitable principles, held a city by-law to be unreasonable, and consequently void, which would permit one person to carry on a dangerous business, and prohibit another who has an

equal right, from pursuing the same business.  This principle seems directly applicable to the case now in judgment, since the multiplication of dangers is the only plausible ground upon which the County Judge could base a refusal of a portion of the applicants.

Mr. Cooley, in his work on Constitutional Limitations, lays it down as a maxim of constitutional law, by which all enactments, and we may add, constructions of enactments, are to be tested;   that those who make the laws " are to govern by promulgated, established laws, not to be varied in particular cases, but to have one rule for rich and poor, for the favorite at court and the countryman at the plough"—quoting from Locke on Civil Government Sec. 142 (See *Cooley's Const. Lim., Mar. p.* 392.)

In *Lewis v. Webb,* 3 *Me.,* 326, this principle is thoroughly recognized.   The court say " On principle it can never be within the bounds of legitimate legislation to enact a special law or pass a resolve dispensing with the general law in a particular case, and granting a privilege and indulgence to one man by way of exemption from the operation and effect of such general law, leaving all other persons under its operation.   Such a law is neither just nor reasonable in its consequences.   It is our boast that we live under a government of laws and not of men, but this can hardly be deemed a blessing unless those laws have for their immovable basis the great principles of constitutional equality."

The Honorable Judges of the County and Circuit Court of Jefferson County, and the attorneys in this case, have manifested a spirit of candor which is commendable, and which evinces an earnest desire to be thoroughly advised of the proper practice.   They have discarded all technical advantages, but have been careful to present to the courts in succession the naked question, whether or not

the County Court, under the law, can without any reason assigned, at its own option, grant licenses to some citizens, and refuse them to others in every respect as well qualified to receive them, and standing before the Court in all respects in the same light.   We have endeavored to meet the question in the same spirit, and to settle it for the whole State, have gone somewhat beyond what the case requires.

Upon a review of all the conflicting and modified views, which have been expressed by the courts, a majority of the court determine :

That any construction of law which gives to the County Court the power, arbitrarily to grant licenses to some individuals, and refuse them to others in the same township or ward, equally as competent and as worthy, and without any cause assigned, is contrary to the spirit of our government and in hostility to the declarations of our Bill of Rights, and a misapprehension of legislative intent.

We think the discretion of the County Court extends to determining whither or not any license at all shall be issued in any particular township or ward, after that discretion may have been conferred by the vote of said township or ward, and by the vote of the county.   But, having adopted the policy by issuing any license, it has no further discretion in a particular case, than to determine whether the applicant has complied with all the requirements of the law, and is of good moral character, and, we think, upon refusal, the grounds of the objection should be shown, that it may be seen whether or not the court has exercised a sound legal discretion in the matter.

In coming to this conclusion we have carefully weighed, on one hand, the evils likely to ensue upon a multiplicity of licenses.   We incline to think a few dram shops in any

locality, although not perhaps as great a nuisance as many, would be quite as pregnant with evils to the morals of the community, as many. The actual supply of intoxicating drinks would be, in each case, about the same, and quite as easily accessible.

Upon the other hand we have considered the true spirit of our free government as to the absolute equality of citizens, the meaning of our provision against exclusive privileges, the dissatisfaction likely to ensue from groundless discriminations, and the danger of corruption which may grow out of favoritism, and the temptation to undue inflences to secure the privilege. Nothing of the sort is revealed by this transcript. The County Judge, as shown by the nature of these proceedings, has been concientionsly desirous of being advised as to his duty. But shocking corruptions may grow out of the practice of an uncontrolled discrimination.

This cause must be remanded to the Circuit Court to be heard *de novo* upon the appeal, and to be decided in accordance with the principles herein announced.

Hon. E. H. ENGLISH, C. J., dissenting.