HARRISON *v.* NORTON.

Opinion delivered May 20, 1912.

1. TAXATION—REMEDY AGAINST ILLEGAL EXACTION.—Under Const., art. 16, sec. 13, authorizing any citizen of any county, city or town to "institute suit in behalf of himself and all others interested to protect the inhabitants thereof against the enforcement of any illegal exactions whatever," and Kirby's Digest, section 3966, providing for injunctions and restraining orders in all cases of illegal or unauthorized taxes and assessments, etc., the chancery court has jurisdiction to restrain the collection of an illegal tax. (Page 21.)

2.  SAME—ELECTION ON ROAD TAX—EFFECT OF MISTAKE IN RETURN.—
    Where a county election upon the subject of a road tax was in favor
    of the tax, but by mistake in footing up the returns the election com-
    missioners certified to the contrary, a court of chancery has authority
    to correct the mistake.  (Page 21.)

Appeal from Lincoln Chancery Court; *John M. Elliott*, Chancellor; affirmed.

### STATEMENT BY THE COURT.

At the general election held in Lincoln County on September 12, 1910, the question of public road tax was submitted to the voters of Lincoln County under Amendment No. 5 to the Constitution, which provides that a road tax not exceeding three mills may be levied if a majority of the qualified electors of the county shall have voted a public road tax at the general election for State and county officers. After the returns were in from the various precincts, the election commissioners, B. F. Tarber, W. A. Echols, and E. L. Paul, met on the 16th day of September, 1910, canvassed the returns, and declared the result of the election. They certified to the Secretary of State that the total number of votes cast for road tax was 533. Having finished their work, they adjourned on the 26th day of September. Thereafter a letter was received by Messrs. Tarber and Echols from two of the election judges of Choctaw township, stating that the judges of that township had made an error in the count upon the subject of road tax, in that the poll book filled out and signed by them showed forty votes for and 260 votes against the road tax, when the same should be 140 for road tax and 160 against. On the 7th day of October following Tarber and Echols met at the Lincoln County Bank, where the ballots had been kept since the original canvass was made, re-examined the tallies or pencil marks on the tally sheets, and decided that the vote on the subject of road tax should be in Choctaw township 140 votes for, and 260 votes against the tax. They then went to the county clerk, and directed him to change the result on the original certificate which they had filed with the clerk so as to make it read 633 for, and 394 against road tax, instead of 533 votes for and 394 votes against, as shown by the original certificate filed with the county clerk.

At the general election in Lincoln County for the year 1910 the number of the electors voting for county officers was 1093. On the first Monday in October, 1910, the levying court of Lincoln County levied a public road tax of three mills. The appellant brought this suit in the Lincoln Chancery Court, alleging that the road tax imposed by the levying court and extended against the property of the plaintiffs was illegal and void for the reason, as alleged, that the number of electors voting for road tax at the general election next preceding said levy was less than a majority of the electors participating in said election, and praying that they be granted an injunction restraining the collector of Lincoln County from collecting said tax. The appellee, as sheriff and collector, answered, denying the allegations of the complaint and alleging that at the meeting of the county levying court on the first Monday in October, 1910, it found that a majority of the qualified electors of such county voted for the county public road tax of three mills at the general election held on the 12th day of September, 1910. At the hearing, B. F. Tarber, one of the county election commissioners, testified, in addition to the facts as already stated, that E. L. Paul, the other member of the board of election commissioners, was not notified of the time, place and the purpose of the meeting of himself and Echols for the purpose of recanvassing the returns of the election; that he and Echols changed the result on the subject of road tax 100 votes and changed the result from 533 for and 494 against to 633 for and 394 votes against the road tax from an examination of the tally sheets. In going over the returns, they did not count any of them. They simply used the totals in that township. The totals extended showed 40 for road tax and 260 against. ''When we went to correct it, after getting the letter from the judges, we found it as above.'' The result of the election on the subject of road tax was correctly declared by the commissioners on the 16th of September, 1910, as shown by the poll books and tally sheets. The error, if there was an error, was made by the judges of Choctaw township, and not by the commissioners. The other commissioner, Echols, testified to substantially the same facts. He stated that, after getting the letter from the judges referred to, he and Tarber met on the 7th day of

October, re-examined the tally sheets and poll books, but did not count the ballots of Choctaw township. They directed the clerk to change the general result on the subject of road tax. E. L. Paul, the other commissioner, did not know when he and Mr. Tarber were to meet and re-examine the returns, nor did he have notice of said meeting. The original poll book as sent to them from Choctaw township showed forty votes for and 260 votes against road tax. It showed the same when exhibited to them while testifying. It was not changed by them, but they had ascertained that the judges of election had made a mistake of 100 votes, as shown by the tally sheets, and so they directed the clerk to change the general result on the subject, so as to show that there had been 633 votes for, and 394 against, road tax, instead of 533 votes for road tax. There was a mistake in the total vote as extended by the judges of election, as shown by the tally sheets of 100 votes in Choctaw township.

The chancellor in his opinion found the following: "The two members of the county board of election commissioners who canvassed the returns on September 16 and who re-examined them on October 7 have identified these ballots, which remained sealed in packages and directed to the commissioners as provided by law. No question as to the genuineness of the ballots introduced in evidence has been raised. They show that 140 votes were cast for road tax and 160 against it. The tally sheets, which were identified by the two members of the board, show the same result. There are on these sheets actually 140 tallies opposite the words 'For Road Tax' and only 160 tallies opposite the words 'Against Road Tax', but when the judges came to count the tallies and put down the total they placed the number 40 opposite the vote 'For Road Tax' and 260 opposite the vote 'Against Road Tax,'" It seems to have been simply a clerical error. The court further found that "it appears from the undisputed evidence that 633 votes were cast at the election in favor of road tax and 494 against it, and that therefore a majority favored the road tax." The court held that the action of the levying court was valid, and dismissed the complaint for want of equity.

*Caldwell & Brockman,* for appellants.

1. The evidence does not support the court's finding of facts.

The statute provides the manner of canvassing and declaring the result of an election. Kirby's Dig., § 2836. How a contest may be begun, *Id.* § 2837, and the manner of keeping and disposing of the ballots and tally sheets by the election commissioners. *Id.* §§ 2838.

Unless a contest is instituted in accordance with the statute, the election commissioners have no power to count the ballots or change the results properly certified by the election judges; and unless the ballots and tally sheets are kept as the statute requires, they are not competent evidence. 50 Ark. 85; McCrary on Elections, 249; 75 Ark. 452. After the day when the statute requires that ballots shall be destroyed, they have no legal existence and are not admissible in evidence. 15 Cyc. 428f; 70 Wis. 409; 50 Ark. 85; 55 Ark. 12; 41 Ark. 111; 94 Ark. 478.

2. The action of two election commissioners, meeting without notice to the third of the time, place and purpose of the meeting, is void. 52 Ark. 511; 54 Ark. 58; 73 Ark. 187.

3. After completing its duties on September 16, 1910, the election commission was, as a board, *functus officio,* and had no power subsequently to change the result. 35 Ark. 450; 15 Cyc. 383; 22 Barb. (N. Y.) 72; 19 L. R. A. (O. S.) 157, 12 Barb. (N. Y.) 217; McCrary on Elections, (3 ed.) § 232; 45 Mo. 232; 26 O. St. 216.

*Taylor & Jones,* for appellee.

1. The certificate of the election commissioners, while *prima facie* evidence, is not conclusive; and where the court has jurisdiction, it can go behind the act of the commissioners and ascertain the true result. 153 Ind. 440; 55 N. E. 229; 92 Ark. 61, 70; 43 Ark. 62; 85 S. W. 1183; McCrary on Elections, § 374; 15 Cyc. 387, 418; 61 Ark. 246. In a suit of which equity has jurisdiction, if the question of the legality of an election rightfully arises incidentally in the course of the suit, the court will inquire into it and grant relief. 17 S. W. 1016; 78 Ark. 432; 78 Ark. 468; 15 Cyc. 397. The court here has jurisdiction. Art. 16, sec. 13, Const. Ark.

WOOD, J., (after stating the facts). Article 16, section 13, of the Constitution provides: ''Any citizen of any county, city or town may institute suit in behalf of himself and all others interested to protect the inhabitants thereof against the enforcement of any illegal exactions whatever.''

Section 3966 of Kirby's Digest provides for injunctions and restraining orders in all cases of illegal or unauthorized taxes and assessments by county, city or other local tribunals, boards or officers.

Under the authority of these provisions, the chancery court has jurisdiction of the subject-matter of this suit, which was to restrain the enforcement of an alleged illegal exaction. In general, courts of equity have no inherent power to try election contests. This is not an election contest, and the proceedings that govern ordinary contests of that character are not applicable. The chancery court has primarily no jurisdiction over such matters. But this is a suit to restrain the enforcement of an alleged illegal exaction. The only warrant for imposing the road tax in question is to be found in the constitutional provision authorizing the tax when a majority of the qualified electors of the county voting at the general election on the subject has voted for the tax. Ordinarily, the question as to whether or not there has been a majority in favor of such tax would have to be determined by the methods and declared by the agents designated for that purpose by the statute. But where it is alleged that there was fraud or mistake, by reason of which the true result was not determined and declared, then a court of chancery would have the power, as incidental to the relief asked, to annul the result of the fraud or correct the mistake. See 15 Cyc. 397e. The Supreme Court of Kentucky in *Garvey* v. *Dulaney*, 17 S. W. 1016, 1017, announces the correct rule upon the subject as follows:

''Undoubtedly, it is the general rule, and one necessary to a safe governmental policy, that the chancellor will not, by himself or his commissioner, investigate the legality of votes or purge the poll books, and, if the result of the investigation differs from the return of the judges of election, reverse it. If, however, there has been fraud or mistake upon the part of those conducting an election, special in its nature like

this one, equity will at least in such a case permit an investigation, and, if the mistake or fraud appears, grant relief. It is said in McCrary on Elections, page 390, 'cases may, however, arise which do not present the question which of the two persons is entitled to an office, and which are in their nature unlike an ordinary contest. For example, a vote of the people of a county may be taken upon the question of the location or removal of the county seat, or upon the question of subscribing to the capital stock of a railroad company, or upon subscribing or appropriating money to aid any work of internal improvement, or by the people of a city or town upon the question of adopting a charter, and it may happen that the modes of proceeding provided by statute or the common law for contesting elections or trying the title to an office are altogether inapplicable to the determination of questions of fraud, accident or mistake in the conduct of such election cases. In all such cases equity will afford relief.' The authorities are somewhat conflicting as to the proper limit of the rule, but it should certainly be extended so far that if, in an election like this one, the examining board, through fraud or mistake, make a false return, the court, in the exercise of its equitable powers, may correct the wrong."

The chancellor correctly determined in this case that the mistake made by the election commissioners in certifying the result of the election on road tax in Lincoln County was a mere clerical error, a mistake of the judges in declaring the result as shown by the ballots and tally sheets. It is not necessary to go behind the returns to ascertain this, but only to have the result declared according to the returns. The error was simply an erroneous declaration of what the returns of the election on the road tax actually showed. In our opinion, it was such a mistake as a court of equity has power to correct in ascertaining whether or not the alleged tax was an illegal exaction. The judgment of the chancery court dismissing the complaint for want of equity was correct, and it is affirmed.