WILLIAM F. LAMAN, MAYOR ET AL *v.* ROLAND
SMITH

5-5781                                478 S.W. 2d 741

Opinion delivered April 10, 1972

*John T. Harmon,* for appellant.

No brief for appellee.

CARLETON HARRIS, Chief Justice. On December 14, 1970, the City Council of North Little Rock adopted ordinance 3862, such ordinance appropriating $18,600 per year to defray expenses of public relations activities of the mayor and city clerk of that city; $15,000 was appropriated for the use of the mayor and $3,600 for the use of the city clerk, the ordinance providing that the council had determined such amounts to be reasonable and justifiable, and directing the officials named to draw warrants upon the city treasury "in an amount not to exceed one-twelfth of the aforesaid appropriation allocated to each official". Roland Smith, a resident taxpayer of the city, instituted suit in the Chancery Court of Pulaski County wherein he sought a declaratory judgment that the ordinance violated Article 19, §23 of the Arkansas Constitution, and was thus invalid. After the filing of an answer, a stipulation was entered into between the parties that

Smith is a taxpayer of the City of North Little Rock and qualified to bring the action;[1] that the certified copy of the ordinance attached to the complaint is true and correct; and that the present salaries as authorized to the mayor and city clerk are in the sum of $5,000 each per annum. On trial, the court held that the ordinance was null and void and the aforesaid officers and the City of North Little Rock were enjoined from disbursing city funds pursuant to the ordinance. From the decree so entered, appellants bring this appeal.

The court found that ordinance 3862 violated Article 19, §23, of the Arkansas Constitution, which reads as follows:

"No officer of this State, nor any county, city or town, shall receive, directly or indirectly, for salary, fees and perquisites more than five thousand dollars net profits per annum in par funds, and any and all sums in excess of this amount shall be paid into the State, county, city or town treasury as shall hereafter be directed by appropriate legislation."

Appellants contend that this constitutional provision is not self-executing and thus requires enabling legislation, and that such legislation was never passed, leaving the provision inoperative. In support of this argument, we are cited to the case of *Griffin* v. *Rhoton*, 85 Ark. 89, 197 S.W. 2d 380 (1907). The case, which involved the question of the fees and emoluments of the office of prosecuting attorney, is confusing, but a careful reading of same indicates that the court, in saying that enabling legislation was required, was only referring to the effect of the constitutional provision upon the office of prosecuting attorney, and not to other offices, including those of cities or towns. The court recognized that the General Assembly had, in 1875, passed legislation, Act 47 of 1875, in aid of the constitutional provision, carrying out the requirements as to numerous officers, but not including

---

[1]. Smith also testified that he was a resident of North Little Rock, was purchasing property, and that he was a registered voter.

the prosecuting attorney's office.[2]. This is made clear by the case of *White v. Williams.* 187 Ark. 113, 59 S.W. 2d 23 (1933), where this court, through Justice Butler, stated flatly that Act 47 was enabling legislation for Article 19, §23 of the Constitution, and discussed a number of the provisions, hereafter mentioned. So, we think it is clear that enabling legislation was passed; and we so hold.

Pertinent portions of § 5 of Act 47, i.e., those relating to the implementation of the constitutional requirements, have never been changed, and Act 47 of 1875 appears in Ark. Stat. Ann. §12-1801 (Repl. 1968) through §12-1811. Section 5 appears as §12-1805 through §12-1807. Section 12-1805 requires an annual report of county, city, and township officers who come within the purview of the Act, and §12-1806 provides for the review of reports. Section 12-1807 reads as follows:

> "If the total amount of the receipts of the office shall exceed in par funds, or their equivalent of value the sum of five thousand dollars ($5,000), then the officer shall further report the amount expended by him in the conduct of the business of his office for said year, and voucher for all such expenditures shall be produced by the officer reporting, and examined by such Judge, Mayor or other chief officer, and, if such expenditures be approved, the amount thereof shall be deducted from the gross amount or receipts as estimated as hereinbefore prescribed by the reviewing officer, and in all cases where the balance remaining in the hands of any officer shall exceed the sum of five thousand dollars [$5,000], or its equivalent, the excess shall at once be paid into the treasury of the county, city, town or village to which the said office may be appurtenant."

There have of course been changes in the law since 1875 which preclude a literal compliance with all provisions of the sections mentioned; for instance, at the time of the passage of Act 47, numerous governmental offi-

---

[2]. See also *Williams v. Buchanan*, 86 Ark. 259, at 276, 110 S.W. 1024, at 1029, decided by the identical court members who decided *Griffin*.

cers, including mayors, received part, or all, of their compensation from fees which were paid to them; in other words, the money was first paid to the officer, who, after making the deductions authorized by §12-1807 (Act 47 of 1875), including his salary, turned the balance over to the county or city treasury, depending on the office held. Today, most mayors are paid their salaries from tax funds taken in by the city and few fees are received by the mayor himself. We think §12-1807 makes clear that it was the intention of the legislature, in passing Act 47, in implementing the provisions of Article 19, §23, to permit the reimbursement of necessary expenditures of the office involved in addition to the $5,000 salary. The City Council of North Little Rock has declared public relations expenses of the mayor and city clerk to be proper expenses for the welfare of the city and we think such expenditures, under §12-1807, to be authorized in addition to the maximum salary of $5,000.

The court erred in declaring the ordinance unconstitutional but this is not to say that one-twelfth of $15,000 can be paid to the mayor, and one-twelfth of $3,600 paid to the city clerk each month. The ordinance does not so provide; rather, it provides that these officers "are hereby authorized and directed to draw a warrant or warrants on the city treasury in an amount *not to exceed* [our emphasis] one-twelfth of the aforesaid appropriation allocated to each official". If the ordinance authorized the flat sum payment of $15,000 for the mayor and $3,600 for the city clerk, or authorized one-twelfth of that set amount each month, the ordinance would be unconstitutional as being in conflict with Article 19, §23, for in such event the payments would constitute emoluments in addition to the salary. The language of the ordinance itself, by using the italicized words, recognizes that the public relations expenses may not be the same each month, and that the full amount appropriated for the year may not be used. In other words, these officials are entitled to reimbursement for public relations expenditures made up to the maximum amount of the appropriation. This is, of course, entirely different from making a set allowance of funds to a public officer to be used at will.

This is in line with our decision in *Berry* v. *Gordon,* 237 Ark. 547, 376 S.W. 2d 279, which involved public relations expenses for certain state officers. There, different constitutional provisions were involved but the principle and law relative to each is the same. In that case, we were construing Act 399 of 1961, which provided public relations expenses for seven state officers, in the amount of $1,800 each per annum. Section 3 of that Act provided as follows:

"On the first day of each calendar month in each of the foregoing fiscal years, the Auditor of State shall issue a warrant drawn in favor of each of the officials named in Section 2 hereof in the amount of one-twelfth of the appropriation allocated to each such official, and the State Treasurer is hereby authorized and directed to pay said warrants from funds herein appropriated."

It will be noted that that section is different from the city ordinance here under discussion in that §3 of Act 399 provided that each of the officials named should draw one-twelfth of the $1,800 each month, while here, the ordinance provides that the officer may draw *not to exceed* one-twelfth of the total amount appropriated. There is a vast difference, and in *Berry* v. *Gordon supra,* we struck §3 from Act 399 as a violation of our Constitution. This court said:

"Any fair construction of Act 399 of the Legislative Acts of 1961 leads us to the conclusion that the Legislature intended to afford reimbursement of public relations expenditures incurred by certain state officials, as provided in Section 1 of the Act. Section 3 would authorize monthly payments of public relations expenditures by the state officers whether or not they had incurred such expenditures. Therefore, we conclude that Section 3 of Act 399 must be stricken. Otherwise, such reimbursement would violate our Constitution. In view of the expressed intent of the Legislature to provide these state officials with limited public relations expenditures, the officials

are not entitled to reimbursement of expenditures not expended. That Section, when severed, does not affect the intent of the Legislature."

In accordance with what has been said, we hold the ordinance valid, reiterating however that the officers involved in this litigation are not entitled to one-twelfth each month of the total amount appropriated for public relations expenses, but are entitled only to reimbursement up to that amount for public relations expenses actually incurred.

It is so ordered.