William L. TEDFORD, Treasurer of Pulaski County; B. Frank MACKEY, County Judge of Pulaski County; C. B. ROTENBERRY, Comptroller of Pulaski County; Charles F. JACKSON, County Clerk of Pulaski County; L. E. TEDFORD, County Assessor of Pulaski County; Monroe LOVE, Sheriff of Pulaski County; Vernon NOAKES, County Collector of Pulaski County; and Roger McNAIR, Circuit Clerk of Pulaski County *v.* Roger MEARS and Robert (Bob) SCOTT

74-237                          526 S.W. 2d 1

Opinion delivered July 7, 1975

*Lee A. Munson,* Prosecuting Attorney, and *Henry Ginger,* Deputy Prosecuting Atty., for appellants.

*Cliff Jackson,* for appellees and cross-appellants.

CARL CREEKMORE, Special Justice. This is a taxpayers action challenging the constitutionality of Acts 680, 280, 279, 321, 353 and 603 of the General Assembly of 1971, and Acts 610, 562, 691, 565, 517 and 568 of the General Assembly of 1973.

The Trial Court held the Acts unconstitutional, restrained further payment under their provisions, ordered accounting and restitution by three of the county officials and held Chancery Court to be without jurisdiction to require accounting and restitution by the other three officials. The county officials appealed and the taxpayers filed a cross appeal.

The challenged Acts are comprehensive legislation dealing with numerous county officials, including Pulaski County, providing for the allowance of expense accounts as set out in the respective Acts. The 1971 Acts provided an expense account of $4,800.00 per annum for two of the Pulaski County officials and $5,400.00 per annum for the remainder of the Pulaski County officials. The 1973 Acts were identical to the 1971 legislation except to the amount of money. The 1973

Acts provided an expense account of $5,400.00 per annum for the County Treasurer and $6,000.00 per annum for the other county officials of Pulaski County.

Appellee taxpayers filed this action alleging that all of the Acts were void as an effort to make an allowance to the various county officials of Pulaski County, thereby increasing their salaries in violation of Article 19, Section 23, of the Arkansas Constitution, which provides: "No officer of — any county — shall receive, directly or indirectly, for salary, fees and perquisites more than Five Thousand Dollars net profits per annum in par funds — ".

The Acts provide that each of the named Pulaski County officials shall, in addition to his salary of $5,000.00 per annum, "be allowed an expense account not to exceed (the amount designated for each official) per annum, from which he shall be reimbursed for all reasonable and necessary expenditures incidental to the proper performance of the duties and operation of his office."

The Trial Court made the following finding of fact with reference to the disbursement of the expense accounts provided by the respective acts:

"The defendants, L. E. Tedford, Vernon Noakes and William L. Tedford, filed monthly claims with the County Court, certifying that 'the foregoing claim is just and correct, and that no part thereof has been paid previously, that the services charged for or materials furnished, as the case may be, were actually rendered, or furnished, and that the charge made therefor does not exceed the amount allowed by law . . .' The defendants, B. Frank Mackey and C. B. Rotenberry, County Judge and Comptroller, respectively, approved and authorized the payment of these claims; the defendant, Charles F. Jackson, County Clerk, issued warrants on the county funds pursuant to said authorizations; and the defendant, William L. Tedford, County Treasurer, paid and honored these warrants out of county funds.

"The defendants, Monroe Love, Roger McNair, and

Charles Jackson, filed no claims with the County Court requesting disbursement of county funds for 'expenses', nor do the county records reveal any approval or authorization from the County Court for the payment of 'expenses' of these three officials. Each of these defendants deducted his 'expense' check from the fees and emoluments received in his office, indicating these deductions on monthly emolument reports filed with the County Clerk. The county records indicate no documents signed by the County Court approving these monthly emolument reports, nor do the records reflect any County Court approval of the year-end settlements filed by these officials.''

The Trial Court found that the expense account money received by Monroe Love, Roger McNair and Charles Jackson was not reimbursement for any expenses incurred for the benefit of Pulaski County, Arkansas, and that the funds received under these acts amounted to compensation in violation of the constitution. The Trial Court made the further finding that:

"All the actual and necessary expenses of the office of each of the county officials are paid for by the County, and, in addition, each official received a monthly car allowance of from $150.00 to $200.00 above and beyond his salary and his expense' check."

The points relied on for reversal by Appellants are:

1.  The Trial Court erred in declaring the enumerated Acts unconstitutional as violating Article 19, Section 23 of the Constitution and enjoining the taking of expense allowances thereunder.

2.  The Trial Court erred in requiring accounting and restitution by certain officials of expense allowances drawn.

Four alleged errors by the Court are asserted in the cross appeal. We find merit in Numbers One and Two.

We cannot agree with Appellants on either contention.

We do not find the Acts challenged to be unconstitutional as adopted, but we do find all of them to be unconstitutional as applied and administered in Pulaski County.

In *Laman* v. *Smith*, 252 Ark. 290, 478 S.W. 2d 741, we held an ordinance providing for public relations expenses for the Mayor and City Clerk, in addition to their salary, to be valid. But we held that they could not be paid one-twelfth each month of the amount appropriated, but were only entitled to reimbursement for expenses actually incurred.

In holding that the officers were entitled to reimbursement for public relations expenditures made up to the maximum amount of the appropriation, this Court said:

"This is, of course, entirely different from making a set allowance of funds to a public officer to be used at will." And we emphasized this in the closing paragraph saying: "In accordance with what has been said, we hold the ordinance valid, reiterating, however, that the officers involved in this litigation are not entitled to one-twelfth each month of the total amount appropriated for public relations expenses, but are entitled only to reimbursement up to that amount for public relations expenses actually incurred."

In *Berry* v. *Gordon*, 237 Ark. 547, 376 S.W. 2d, 279, which involved public relations expenses for certain state officers, we invalidated Section 3 of Act 399 of 1961, which provided:

"On the first day of each calendar month in each of the foregoing fiscal years, the Auditor of State shall issue a warrant drawn in favor of each of the officials named in Section 2 hereof in the amount of one-twelfth of the appropriation allocated to each such official, and the State Treasurer is hereby authorized and directed to pay said warrants from funds herein appropriated."

In so doing, we said, "Section 3 would authorize monthly payments of public relations expenditures by (to) the state officers whether or not they had incurred such expenditures. Therefore, we conclude that Section 3 of Act 399 must be stricken."

In *Jones et al* v. *Mears et al*, 256 Ark. 825, this Court upheld the constitutionality of an Act authorizing the members of the General Assembly to obtain reimbursement for actual, reasonable and necessary expenses incurred by the members in performing activities which were directly connected with, and incidental to, their official duties.

In that opinion, it was said, "However, this Court could countenance no claim which appeared to be a sham to evade the constitutional limitation on compensation."

In these cases, this Court recognized the right of public officers to be reimbursed for actual, reasonable, and necessary expenses incurred in performing duties directly connected with, and incidental to, their official duties. But in so doing, the Court has not approved the payment of any funds in excess of the constitutional limitations which could go into the pockets of the recipient.

It is significant that each appellant admitted that federal income tax was deducted from the total of his salary and expenses combined, admitted that state income tax, social security and state retirement were deducted from the total salary and expenses combined, and admitted that the social security deductions and state retirement deductions were matched from Pulaski County funds.

Expense money provided by the Acts in question was received in advance and without any itemization or vouchers. The appellants were at liberty to expend the funds as they so desired without any actual accounting therefor.

Under the facts and circumstances in this case, we are compelled to the conclusion that the receiving of the "expense" money by each and all of the appellants constituted an illegal exaction under many decisions of this Court. An illegal exaction, under the terms of Article 16, Section 13 of our Constitution was defined in *Mackey* v. *McDonald*, 255 Ark. 978, as an exaction that either is not authorized by law or is contrary to law. In the same case, at Page 982, this Court said:

"It seems that, under this section of the Constitution, equitable remedies are accorded the taxpayer to prevent misapplication of funds when the taxpayer may be required to replenish those funds if exhausted through the misapplication. *Eddy* v. *Schuman*, supra. (206 Ark. 849). It also seems clear that this constitutional provision is applicable in every case where taxpayers will bear the burden of replenishing funds exhausted by misapplication." (Citing cases.)

The Court then said:

"The cited cases make it quite clear that a citizen and taxpayer may maintain a suit to prevent a misapplication of funds or to protect against unlawful official acts which could logically result in illegal exaction as well as to require reparation for that which has been done." See *Grooms* v. *Bartlett*, 123 Ark. 255, 183 S.W. 282.

The record reflects that L. E. Tedford, William L. Tedford, and Vernon Noakes filed a claim each month, but without an itemized account as required by Section 17-704 of Ark. Stats. Anno., and obtained the routine approval by the County Court.

Considering all of the facts and circumstances peculiar to this case, we cannot agree with the Trial Court that in so doing, these three officials placed themselves beyond the jurisdiction of Chancery Court to require an accounting and restitution.

We hold that the Chancery Court has jurisdiction in this case to require an accounting and restitution by all of the county officers drawing funds under provisions of the invalidated acts. See *Fuller* v. *State for Use and Benefit of Drainage District No. 3, Craighead County*, 112 Ark. 91, 164 S.W. 770, and *McCoy* v. *State for Use of Greene County*, 190 Ark. 297, 79 S.W. 2d 94.

That part of the Decree holding Chancery Court to be without jurisdiction to require accounting and restitution by L. E. Tedford, William L. Tedford and Vernon Noakes is reversed and the cause is remanded with instructions to

ascertain the amount of restitution to be made by each of these county officials. The Decree is otherwise affirmed.

HARRIS, C. J., dissents in part.

JOHN WARD, Special Justice, dissents.

FOGLEMAN and HOLT, JJ., not participating.

CARLETON HARRIS, Chief Justice. Dissenting in Part. In my opinion, this Court is in error in reversing the Chancellor relative to his finding that the county officers who filed claims, which had been approved by the County Court, did not have to repay such funds. In its opinion, the Trial Court found that there was neither actual, nor "legal", fraud; that accordingly, the Chancery Court has no jurisdiction to order repayment of funds approved as claims by the County Court, — nor does this Court make any finding of fraud. The Chancellor cited *Arkansas Association of County Judges v. Greene,* 232 Ark. 438, 338 S.W. 2d, 672. In that case, we stated:

> "We agree with appellant that the Chancery Court had no jurisdiction to order repayment of claims already allowed. In the absence of fraud (and we think no fraud was shown here) the remedy was by appeal to the Circuit Court. See: Art. 7 § 33 Constitution, Ark. Stats. § 27-2001, and *Jones v. Capers,* 231 Ark. 870, 333 S.W. 2d 242."

Of course, the above holding has been rendered many times. In *Monroe v. Brown,* 118 Ark. 524, 177 S.W. 40, we said:

> "This court has in its decisions steadily adhered to the rule that a county court, in the allowance of claims against the county, acts judicially, and that its judgments are not open to collateral attack except for fraud or lack of jurisdiction. *Jefferson County v. Hudson,* 22 Ark. 595; *State, Use Izard County v. Hinkle,* 37 Ark. 532; *Cope v. Collins, Admr.,* 37 Ark. 649; *Lincoln County v. Simmons,* 39 Ark. 485."

Our most recent pronouncement on this subject was

*Cook* v. *Burchfield, Judge,* handed down on June 16 of this year, where we reiterated our prior holdings that the Chancery Court had no jurisdiction, in the absence of fraud, to order repayment of claims already allowed by the County Court.

Accordingly, I would affirm the Chancellor's findings and therefore respectfully dissent.

JOHN WARD, Special Justice, dissenting. I disagree with the majority holding that the Chancellor was correct in ordering restitution. There seems little question that the equity court has jurisdiction over illegal exactions, as defined in the majority opinion, both to enjoin payment thereof and to require reparation for that which has been done. But as pointed out in the decision of this court in the case of *Mackey* v. *McDonald,* 255 Ark. 978, 504 S.W. 2d, 726, an illegal exaction may be found with or without a fraudulent intent. In that case, the court said:

> "We agree with the Chancellor's finding that no fraud or bad faith had been shown. The illegal exaction principle, however, is not confined to such cases, even though there may have been several occasions where these elements were the bases of finding that there had been illegal exactions. A good faith misapplication of funds in a manner or for a purpose not authorized by law constitutes an exaction from the taxpayers which is illegal even though not fraudulent."

I believe our prior decisions have established that restitution should be treated differently in absence of a finding of fraud from those cases involving a positive finding thereof. In the case of *Starnes* v. *Sadler,* 237 Ark. 325, 372 S.W. 2d 585, it was decided that the conduct in question produced an illegal exaction, but upon the issue of restitution it was said:

> "Concerning the prayer of appellants for an accounting by appellees of any funds unlawfully received by virtue of holding dual offices, there is nothing in the record to justify a finding that appellants have acted with any fraudulent intent, or that they have even appreciated the possibility of their holding illegal offices."

Thereupon the court refused to order restitution.

In this cause the Chancellor specifically found there was no fraudulent conduct on the part of the county officers involved. That finding was not disturbed by this Court, and rightfully so. When the ingredient of fraud is involved, it cries out for reparation. But when it is absent, and when the conduct is carried out under color of statute, restitution should not be ordered. The logic behind such a view is that the opposite finding requires county officials, all of whom are untrained in the law and are not required to be lawyers, to make a judicial determination of the legality of a particular statute or administrative process. That is too heavy a burden.

For the reasons stated, I would affirm the decision of the Chancellor as to all points but that which ordered restitution.