Bill TABER, d/b/a Taber's Grass Farm *v.* James C. PLEDGER, Director Arkansas Department of Finance and Administration

89-353                                                791 S.W.2d 361

Supreme Court of Arkansas
Opinion delivered June 18, 1990

*Jack, Lyon & Lyon, P.A.*, by: *Eugene G. Sayre*, for appellant.

*John H. Theis, Philip Raia, Robert L. Jones, William E. Keadle, Ricky L. Pruett, Cora L. Gentry, David B. Kaufman,* and *Beth B. Carson,* by: *Malcolm P. Bobo,* for appellee.

DAVID NEWBERN, Justice. This is a gross receipts tax case in which the principal question is whether the taxpayer must pay all of an assessed deficiency before he becomes eligible to file suit for a refund. Appellant Bill Taber contends the tax should be

regarded as divisible so that, if he has paid some of the deficiency declared by the commissioner for each month, or if he has paid all of the deficiency for any month for which the deficiency was assessed, he can bring a suit in chancery court to determine whether any tax should have been assessed. He also contends the assessment constitutes an illegal exaction and violates the common law and his right to due process of law. The commissioner argues the entire assessment must be paid before the chancery court has jurisdiction to rule on a refund claim. We decline to adopt a divisible tax position contrary to a statute requiring full payment or posting a bond as a prerequisite to suit. We find the tax is not an illegal tax, thus there is no illegal exaction, and whatever common law right Taber may have had has been changed by legislation. Nor has Taber sustained his contention that his right to due process of law has been violated. The chancellor's decision to dismiss the complaint for failure to state facts upon which a claim for relief can be granted is affirmed.

Taber grows sod. For years he sold it only from his farm. He sold some on a retail basis and some to dealers for resale. He thought his retail sales exempt from sales tax under Ark. Code Ann. § 26-52-401(18)(C) (Supp. 1989) which exempts gross receipts from the sale of raw products from the farm where the sale is made direct from the producer to the customer. He thought his sales to retailers exempt under § 26-52-401(12)(A) (Supp. 1989) which exempts proceeds from sales for resale.

In 1986, Taber decided to open a selling outlet on rented property away from his farm. Realizing that such sales would be taxable, he applied for a permit. An audit of his business was conducted, and it was determined that Taber owed gross receipts taxes for the period September 1, 1980, to August 31, 1986, with respect to his retail sales. Taber sought, without success, to have the decision revised. A hearing was held by the Arkansas Department of Finance and Administration Board of Hearings and Appeals. The commissioner, upon timely request, refused to abate or revise the decision, and a final deficiency assessment was levied August 23, 1988, in the amount of $26,048.66, including interest. A writ of execution against Taber's property to collect the deficiency was issued in December, 1988.

In an effort to comply with Ark. Code Ann. § 26-18-406(2)

(1987), Taber attempted to file a bond in the amount of twice the assessment which would have permitted him to bring suit within 30 days after the filing of the bond to have the commissioner's decision set aside. The bond he tendered was a property bond, and the director found it unsatisfactory and refused to accept it, as he was authorized to do. Ark. Code Ann. § 26-18-304 (1987). Taber was financially unable to post a corporate or cash surety bond.

Under threat of execution, Taber paid $360.00 to the commissioner, asking that $5.00 be allocated to each of the 72 months comprising the deficiency period, and filed suit for a refund of the money. A temporary restraining order was issued. Thereafter, Taber paid further, designating the payment as payment in full for some 13 specified months in the years covered by the assessment.

Four theories were asserted by Taber in the chancery court. He contended he was entitled to a refund (1) pursuant to § 26-18-406, which permits an action to be brought to overturn the final decision of a hearing officer upholding a deficiency assessment, (2) pursuant to § 26-52-507, which permits an action for a tax overpayment, (3) pursuant to Ark. Const. art. 16, § 13, authorizing an action to prevent an illegal exaction, and (4) pursuant to taxpayers' rights at common law. The chancellor rejected the theories offered, said she lacked jurisdiction of the claim, and dismissed the complaint, without prejudice.

*1. Return of payment, § 26-18-406*

The federal tax system permits a taxpayer who had paid a divisible portion of an excise tax to seek judicial relief from the assessment pursuant to which the payment was made. Taber cites *Jones* v. *Fox*, 162 F. Supp. 449 (1958), as exemplary of cases invoking the divisible excise tax principle. It is also mentioned in *Flora* v. *United States*, 362 U.S. 145, 175, n.38 (1959). The theory behind distinguishing excise from income taxes, and for permitting divisibility with respect to the latter but not the former, is that an excise tax is usually payable upon a transaction or for a short period which can be divided from other transactions or periods. Income taxes, on the other hand, are more complicated, and must take into account deductions as well as exemptions.

Taber's contention is that the Arkansas tax scheme was modeled on the federal tax scheme, and we should therefore implement the division principle. He concedes, however, that there is no federal statute like § 26-18-406(d) which states that § 26-18-406 provides the "exclusive method for seeking relief from a written decision of the director establishing a deficiency in tax." The "method" is the posting of a bond, as discussed above, or payment under protest of the deficiency plus penalty and interest and filing suit within one year.

■ The fact that Ark. Code Ann. § 26-18-204(e) (1987) states that a "taxpayer *may* seek relief" under § 26-18-406 takes nothing away from the clarity of the exclusivity language of § 26-18-406. Nor does the fact that the second sentence of § 26-18-406(d) states that there shall be no injunctive relief against assessment or collection. It gives the taxpayer the exclusive method of challenge.

■ In view of the clear statutory provision of the "exclusive" remedy for challenging a deficiency assessment, we have no authority to invoke the divisible tax scheme.

### 2. Overpayment, § 26-52-507

Section 26-52-507(a) provides:

> Any taxpayer who has paid any state tax to the State of Arkansas, through error of fact, computation, or mistake of law, in excess of the taxes lawfully due shall, subject to the requirements of this chapter, be refunded the overpayment of the tax determined by the director to be erroneously paid upon the filing of an amended return or a verified claim for refund.

■ Taber filed for a refund, following the procedure outlined in subsequent subsections of this statute, and it was denied. He reasserts his divisible tax argument with respect to this section, contending that each of the payments he made was an overpayment because no tax was due. We do not consider this section to apply in this case. It deals with a taxpayer's overpayment through "error of fact, computation, or mistake of law." Taber paid under protest rather than through error. We have no doubt that his remedies fell under § 26-18-406, not § 26-18-507.

### 3. Illegal exaction

Article 16, § 13, of the Arkansas Constitution provides: "Any citizen of any county, city or town may institute suit in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exaction whatever." Taber contends this provision gave the court jurisdiction to entertain his claim. It is argued that this case is like *McCarroll* v. *Gregory-Robinson-Speas, Inc.*, 198 Ark. 235, 129 S.W.2d 254 (1939), where we held the chancellor had jurisdiction of an illegal assessment.

In the *McCarroll* case we held the chancellor had jurisdiction to entertain an illegal exaction where it was alleged, and the chancellor held, that the Arkansas income tax was void to the extent it was to be applied to money earned by vinegar making plants operated by the taxpayer outside Arkansas. There it was alleged, and held, that the statute creating the tax was unconstitutional. An illegal exaction suit was held to be appropriate, and it was held that the taxpayer could not be limited to the procedures allowed by the tax act to challenge the assessment. We find a suit to declare a tax statute unconstitutional, and therefore void, to be different from a suit to determine whether the taxpayer's transactions fall within an exemption created by the statute. We cannot agree that the *McCarroll* case gives chancellors jurisdiction to hold that the procedural requirements of the tax law do not apply when there is no allegation that the basic tax statute is void.

The same is true of *Harrison* v. *Norton*, 104 Ark. 16, 148 S.W. 497 (1912), cited as a "see also" case by Taber. There, the chancellor was held to have jurisdiction of an illegal exaction suit where a county road tax was challenged because the results of the election which had resulted in the tax had allegedly been improperly reported. Again, there was a challenge to the validity of the underlying tax law.

The remaining case cited in the part of Taber's brief dealing with the illegal exaction point is *Samples* v. *Grady*, 207 Ark. 724, 182 S.W.2d 857 (1944). We held that a taxpayer is not bound by a statutory provision requiring posting a bond where the suit is for an illegal exaction against the collector for misuse of taxes which have been collected.

The commissioner contends the illegal exaction provision has been held to apply only to an "illegal tax" or an illegal use of funds, citing *Starnes* v. *Sadler*, 237 Ark. 325, 372 S.W.2d 585 (1963).

The *Starnes* case held only that art. 16, § 13, conferred jurisdiction on the chancellor to enjoin members of the general assembly from holding other state offices. In *obiter dicta* the court stated that the provision applied to an illegal tax and to the misappropriation or misuse of state funds.

In his reply brief, Taber responds with reference to *Hardin* v. *Gautney*, 204 Ark. 723, 164 S.W.2d 427 (1942), where we held that a chancery court has jurisdiction to determine whether a "transaction" should not be taxable. That case, however, was based on a specific statute giving the court jurisdiction. Act 386 of 1941, §10. That provision was repealed by Act 401 of 1979, § 48(c).

We cannot hold the chancellor erred in declining to find Taber's complaint stated a claim for illegal exaction.

### 4. Common law and due process

Taber's final segment of argument is that the common law affords a remedy to a taxpayer to recover involuntarily paid taxes and that to deny him this relief as well as illegal exaction relief and to deny his arguments for divisibility of the tax under the tax scheme is to deny him due process of law.

Exemplary of cases cited for the common law right to return of an involuntarily paid tax is *City of Little Rock* v. *Cash*, 277 Ark. 494, 644 S.W.2d 229 (1982). That was an illegal exaction case where we contrasted a payment made by a taxpayer voluntarily. We held the city had created an illegal exaction by allowing a charge to be made to water consumers without authority. We were not dealing with a statute controlling the method by which an assessment could be challenged.

The general assembly has obviously altered the common law with the enactment of § 26-18-406, discussed above, which provides the exclusive method for challenging a deficiency determination. This leaves us with the due process argument.

■ During oral argument counsel for the commissioner

correctly pointed out that in this case we are considering whether the chancellor erred in holding that the complaint failed to state facts upon which a claim for relief could be granted. The due process argument was included in the count of the complaint dealing with § 26-18-507 only, and it is doubtful that the chancellor was given the opportunity to consider the full range of the due process argument being made on appeal. We cannot ascertain that from Taber's appendix.

Be that as it may, Taber has been unable to cite one case where it was held that a statute requiring either posting a bond or full payment before challenge of a tax is unconstitutional. We are sensitive to and fully appreciative of Taber's conclusion that, with respect to a taxpayer who can neither make full payment nor post the required bond, the commissioner has "confiscatory" power. In this case it will mean that the commissioner may be able to foreclose his lien on Taber's property with no judicial review of Taber's claim of exemption.

At first blush, it sounds as if a court should be able to come up with a remedy for a taxpayer in that position, but that ignores the other side of the coin which is well illustrated in Mister Chief Justice Warren's opinion in *Flora* v. *United States, supra*:

> A word should also be said about the argument that requiring taxpayers to pay the full assessments before bringing suits will subject some of them to great hardship. This contention seems to ignore entirely the right of the taxpayer to appeal the deficiency to the Tax Court without paying a cent. If he permits his time for filing such an appeal to expire, he can hardly complain that he has been unjustly treated, for he is in precisely the same position as any other person who is barred by a statute of limitations. On the other hand, the Government has a substantial interest in protecting the public purse, an interest which would be substantially impaired if a taxpayer could sue in a District Court without paying his tax in full. . . [362 U.S. 175-176, footnotes omitted].

The Supreme Court thus held that judicial review by a court created under Article III of the Constitution of the United States was not available to a taxpayer where Congress had required

payment of the tax in full as a prerequisite, and the taxpayer had not complied. While we have no tax court in Arkansas, our law does accord administrative remedies to the taxpayer of which, as reported earlier in this opinion, Taber has taken full advantage.

While we are sympathetic with a taxpayer in Taber's position, we cannot say he has demonstrated that the Due Process Clause entitled him to pursue his claim in a court.

Affirmed.