Mahlon MARTIN, Director of the Arkansas Department of Finance and Administration *v.* COUEY CHRYSLER PLYMOUTH, INC.

91-50                                        824 S.W.2d 832

Supreme Court of Arkansas
Opinion delivered February 17, 1992

*Cora L. Gentry*, for appellant.

*Johnson & Harrod*, by: *William E. Johnson*, for appellee.

STEELE HAYS, Justice. By this appeal we must decide whether the Chancery Court of Ashley County had jurisdiction to enjoin the appellant, as Director of the Arkansas Department of Finance and Administration, (ADFA) from proceeding under the Arkansas Tax Procedures Act to collect unpaid gross receipts (sales) taxes from Couey Chrysler Plymouth, Inc., appellee, on the sale of new automobiles. Couey maintains that an attempt by the ADFA to collect sales taxes from a party not responsible for their payment under law is an illegal exaction within the meaning of Ark. Const. art. 16, § 13. We hold that the efforts of ADFA to collect taxes from Couey under the circumstances of this case were not an illegal exaction and, therefore, the Ashley Chancery Court had no jurisdiction.

Auditors of the ADFA examined invoices of Couey's sales of automobiles covering a period from July 1, 1985, to June 30, 1988. When invoices given by Couey to its financing agent, Chrysler Credit Corporation were compared with records maintained by the Office of Motor Vehicles of the ADFA, the auditors discovered that Couey prepared two sets of retail installment contracts for some 340 vehicles sold during the period covered by the audit. One contract, reflecting the actual selling price, was sent to the financing agent. The other, reflecting a significantly lower purchase price, was sent to the Office of Motor Vehicles to determine the amount of gross receipts tax due on the transaction. ADFA contends the 340 transactions involved sales price discrepancies ranging from a low of $160 to a high of $10,519. The resulting loss in revenues to the state was calculated to be $60,960.46.

On October 14, 1988, AFDA notified Couey of a jeopardy assessment and demanded payment of the amount claimed, plus penalty and interest. The notice of jeopardy assessment required that Couey either pay the assessment or request an administrative hearing within five business days. Couey was notified that failure to respond within the allotted time would result in the filing of a certificate of indebtedness, the equivalent of a judgment against Couey's real and personal property. Arkansas Code Ann. § 26-18-701(3)(A) (1987).

Couey requested an administrative hearing and argued the

consumer, rather than the dealer, was liable for gross receipts taxes under Ark. Code Ann. § 26-52-510 (1987) and that a jeopardy assessment could only be instituted against a party responsible for paying the tax, relying on Ark. Code Ann. § 26-18-402 (1987). An administrative law judge upheld the jeopardy assessment and notified Couey it had twenty days to appeal to the Commissioner.

The statutory procedure for obtaining judicial relief from an administrative decision establishing a tax deficiency is set out in Ark. Code Ann. § 26-18-406(a) (1987). Within thirty days after a final decision, a taxpayer may seek judicial relief by paying the tax under protest and filing suit to recover the amount within one year, or posting a bond in double the amount of the tax deficiency to stay the effect of the administrative decision and filing suit within thirty days. Section 28-18-406(d) provides, "[t]he method provided in the section is the exclusive method for seeking relief from a written decision of the director establishing a deficiency in tax" and "[n]o injunction shall issue to stay proceedings for assessment or collection of any taxes levied under any state tax law."

Couey did not pay the amount under protest or post a bond to stay the effect of the administrative decision but filed an illegal exaction suit requesting the Ashley Chancery Court for injunctive relief to prohibit ADFA from proceeding further against it, also requesting attorney's fees and costs.

ADFA responded that Couey was liable for the gross receipts tax and the statute specifically provided no injunction could issue to stay deficiency proceedings. ADFA also counterclaimed alleging fraud, unjust enrichment and a willful attempt by Couey to evade payment of the tax under Ark. Code Ann. § 26-18-501 (1987); that Couey's actions fraudulently caused a deficiency to be reported on a tax return in violation of Ark. Code Ann. § 26-18-208(4) (1987). Couey replied that none of the statutory provisions relied upon by the ADFA applied to an automobile dealer.

The Chancellor granted Couey's motion for summary judgment finding no genuine issue of material fact, and that the statutes made it clear the taxpayer was the consumer, not the dealer. He also held § 26-18-406(d) to be in violation of the illegal

exaction provision of the Arkansas Constitution to the extent the statute prohibited injunctive relief. Couey was awarded a $5,000 attorney's fee pursuant to Ark. Code Ann. § 16-22-309 (1987) because AFDA's answer to the petition stated no justiciable issue of law or fact and was without any reasonable basis. Couey reserved the right to file a motion for summary judgment as to the allegations in ADFA's counterclaim.

On August 23, 1989, ADFA filed a first amended counterclaim, alleging that by delivering contracts reflecting an incorrect sales price to consumers Couey committed a tortious interference with an implied contract between the taxpayers and the state. ADFA also alleged intentional interference with prospective economic advantage and conversion. A second amended counterclaim, filed on May 7, 1990, added a misrepresentation claim and requested punitive damages.

Couey filed a motion for summary judgment and a motion to strike and dismiss the amendments to the counterclaim. The Chancellor struck the first and second amended counterclaims due to prejudice and undue delay they would cause by presenting new tort issues. He also held ADFA estopped from asserting that Couey was liable for the gross receipts tax and that the election of remedies doctrine prevented the ADFA from first commencing jeopardy assessment procedures against Couey and then attempting to pursue non-statutory causes of action.

After striking the amendments, the Chancellor entered a summary judgment in Couey's favor on the original counterclaim. The basis for the decision was that the statutory provisions relied upon by ADFA in the counterclaim applied only to the party responsible for paying the tax, the consumer.

On appeal, ADFA argues the Chancellor lacked subject matter jurisdiction as the statute expressly prohibits injunctive relief to stay a tax assessment proceeding. The Chancellor held Couey's claim was an illegal exaction, and the statue prohibiting injunctive relief was in violation of Ark. Const. art. 16, § 13. ADFA maintains that because Couey does not contest the legality of the tax, no illegal exaction was presented.

Arkansas Const. art. 16, § 13, provides, "[a]ny citizen of any county, city or town may institute suit in behalf of himself and all

others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever." The illegal exaction provision is self-executing and requires no enabling act or supplementary legislation to make its provisions effective. The section confers the right to institute suits against the enforcement of an illegal exaction. Section 13 imposes no terms or conditions upon the right of the citizen to file suit, and this court has stated "we would be required to write something into the Constitution, which does not there appear, if we hold that this right was conditional." *Samples* v. *Grady*, 207 Ark. 724, 182 S.W.2d 875 (1944); `Nelson` v. *Berry Petroleum Co.*, 242 Ark. 273, 413 S.W.2d 46 (1967). The General Assembly has the authority to regulate the practice to be pursued in enforcing the illegal exaction provision as long as the constitutional guarantee is not abridged. *Samples* v. *Grady, supra*; *Taxpayers' Suits to Prevent Illegal Exactions in Arkansas*, 7 Ark. L. Rev. 130 (1954).

In *Schuman* v. *Ouachita County*, 218 Ark. 46, 234 S.W.2d 42 (1950), the court stated that a flaw in the assessment or collection procedure, no matter how serious from the taxpayer's point of view, will not make the exaction illegal. *See also Beard* v. *Wilcockson*, 184 Ark. 349, 42 S.W.2d 557 (1931). In the *Schuman* case, the defect in the procedure was that the property owners encountered undue difficulty in discharging their debt to the state because the taxes were so extended on the tax books. In the *Beard* case, we held there was no illegal exaction because the taxes were not illegal or unauthorized but were only excessive in their amount.

AFDA cites *Hardin* v. *Gautney*, 204 Ark. 723, 164 S.W.2d 427 (1942). Hardin, the Commissioner of Revenues, filed a certificate of indebtedness with the Circuit Clerk of Mississippi County asserting that O.M. Morgan owed gross receipts taxes on revenues generated by coin operated music machines for which Morgan had filed no returns. Morgan was notified under the statutory procedures then applicable that the Commissioner would determine the tax and after twenty days issue a certificate of indebtedness. Morgan asked to be heard, evidently contending he was not liable for the tax, as the Commissioner responded that the question of liability would not be addressed at the hearing, only the amount of tax due. Morgan did not appear at the hearing and on February 24, 1942, the certificate of indebtedness was

filed. Under the procedures then in place a taxpayer had thirty days in which to either sue in his home county if he contended the transaction was not taxable or he was not the party charged by law with payment of the tax, or pay the tax and sue in Pulaski County for a refund. Morgan did neither. Rather, on March 28 he petitioned the Mississippi County Court to enjoin the Commissioner from further efforts to collect the tax. The Commissioner moved to dismiss because Morgan had not acted within thirty days as the law required. This court held there was no illegal exaction within the meaning of Ark. Const. art. 16, § 13, upholding the existing statutory procedures:

> We think the legislature had a right to designate a period within which one alleged to owe the state on sales tax, or two percent on gross receipts, would be required to make his defense. If the controversy goes only to the proposition that the transaction is not taxable, or, if taxable, *the person assessed is not the party charged by law with payment*, such issue is determinable by the chancery court of the county where it is sought to compel collection — that is, where the certificate, *prima facie*, creates a lien. If the issue relates only to the *amount* of a valid tax to be paid, then it is appropriate for the general assembly to require payment as a condition precedent to the right to litigate as to any alleged overcharge; and since the fund, when so paid, is transmitted to Little Rock, it is competent for the lawmaking body to fix the venue in Pulaski County. [Our emphasis.]

Recently, in *Taber* v. *Pledger*, 302 Ark. 484, 791 S.W.2d 361 (1990), we said repeatedly that in order for the statutory mechanism to be superseded by an illegal exaction proceeding, the underlying validity of the tax must be challenged:

> We find the tax is not an illegal tax, thus there is no illegal exaction . . .

> \*\*\*

> We cannot agree that the *McCarroll* case gives chancellors jurisdiction to hold that the procedural requirements of the tax law do not apply *when there is no allegation that the basic tax statute is void.*

The same is true of *Harrison* v. *Norton*, 104 Ark. 16, 148 S.W. 497 (1912), cited as a "see also" case by Taber. There, the chancellor was held to have jurisdiction of an illegal exaction suit where a county road tax was challenged because the results of the election which had resulted in the tax had allegedly been improperly reported. *Again, there was a challenge to the validity of the underlying tax law.* [Our emphasis.]

■ The wording of Ark. Const. art. 16, § 13 is broad and not to be narrowed by statute or interpretation. We believe our cases are consistent with that concept. But we also think it clear that the provision was not intended to be the vehicle by which taxpayers air individual grievances in the methods by which taxes are assessed and collected. Rather, it was intended to be the means by which taxpayers, generally in a collective capacity, resist *illegal* taxation.

■ In *Pledger* v. *Featherlite*, 308 Ark. 124, 823 S.W.2d 852 (1992), we discuss the two categories of illegal exactions which are encompassed by our cases. One category, "public funds" exaction cases, deals with the misapplication of public funds or the recovery of funds wrongly paid to a public official. Citing *Brewer* v. *Hawkins*, 242 Ark. 460, 408 S.W.2d 492 (1966), as illustrative, we said public funds exaction cases are given a broad interpretation because taxpayers are the equitable owners of all such funds and are obliged to replenish funds wrongly used. The other category, "illegal tax" exaction cases, involve a taxpayer who seeks to enjoin a governmental entity from taxing him, and are not supported by the same rationale. In this group, of which *Greedup* v. *Franklin County*, 30 Ark. 101 (1875) is typical, "the exaction itself must be alleged to be illegal before the chancery court has jurisdiction under the constitutional provision." *Featherlite, supra*, at 128. Here, the legality of the tax is not at issue and therefore, no illegal exaction occurred. It follows that the chancellor had no jurisdiction in these premises.

Reversed and dismissed.

HOLT, C.J., and NEWBERN and CORBIN, JJ., dissent.

DAVID NEWBERN, Justice, dissenting. Apparently realizing the error of its position, the Arkansas Department of Finance and

Administration (ADFA) effectively admitted Couey Chrysler Plymouth, Inc., (Couey) did not owe the motor vehicle sales tax ADFA was attempting to collect. It attempted unsuccessfully to amend its pleading to state various contract and tort claims. So at this point, ADFA, Couey, and the Chancellor have all concluded the attempt to impose the tax on Couey was wrong and illegal, and yet this Court refuses to characterize the collection of the tax from one who is not even the "taxpayer" under the law as an illegal exaction. That means Couey will have to pay a tax all concede it does not owe, subjecting its property to lien and execution, before it can obtain judicial relief from an act by ADFA which no one can contend was proper.

ADFA did not concede the error of its position until after the Chancellor entered summary judgment against it with respect to its tax claim. It then attempted to amend to state the alternative claims mentioned above. The Chancellor's reaction is contained in part 4. of his statement of conclusions:

> The Court further concludes the two amendments should be stricken under a combined theory of estoppel and undue prejudice. After defendants completed an audit of new car sales by plaintiff, they determined that gross receipts taxes of over $60,000.00 had not been paid on vehicles purchased from plaintiff. Arkansas Code 26-52-510 is clear that payment of such gross receipts tax is the duty of the consumer, not the dealer. Therefore, defendants had the following possible options:
>
> A. Collect the unpaid taxes from the consumers who had allegedly underpaid, or
>
> B. File a civil action against plaintiff, or
>
> C. Both of the above.
>
> None of these remedies were chosen. Instead, defendants, or their agents, assessed the taxes against plaintiff and gave notice that a Certificate of Indebtedness would be filed. Defendants knew, or certainly should have known, that there was no authority for such action under Arkansas law. Therefore, their motives must be considered. The Court has no alternative but to find the defendants opted to shortcut and simplify collection by utilizing a despotic

method intended to intimidate and frighten plaintiff into submission. Legal collection of the taxes from the hundreds of consumers would have been time consuming and burdensome. A civil action against plaintiff would have been time consuming with the result not as certain as of that afforded by a successful filing of a Certificate of Indebtedness. Such certificate provides for a judgment and lien on all property owned by plaintiff, and immediate execution is possible. This is an extreme measure which should not be utilized lightly.

The plaintiff filed an action in this court for an injunction against the Certificate of Indebtedness. Even then, the defendants did not retreat from their incorrect position, but continued to attempt their bluff. Only after this Court granted plaintiff's Motion for Summary Judgment did they acknowledge the dealer was not liable for the tax. They should now be estopped from asserting such a blatantly inconsistent position. The plaintiff had no choice but to rely on the first course of action by defendants in the preparation of a defense against the Certificate of Indebtedness. To have ignored it could have invited immediate execution against his property. The Court can certainly take notice from the number of hearings, the size of the court file, and the briefs submitted that the plaintiff has incurred considerable legal expense. It would be fundamentally unfair and inequitable to allow a powerful state agency to knowingly assert an illegal position against one of its subjects and then change that position entirely after the Court has ruled in a manner which indicates that such tactics will not be allowed. Such change would unduly prejudice plaintiff and should be denied. To rule otherwise would be tantamount to condoning illegal exaction of taxes as opposed to legal civil actions any time private citizens or businesses are indebted to the state for any reason.

The majority is willing to place this Court in the anomalous posture of condoning an illegal attempt at tax collection because this case cannot be placed in one of the illegal exaction categories we have previously described. We have cases in which we have broadly defined an illegal exaction as an exaction that is either not authorized by, or contrary to, law. *Hartwick* v. *Thorne*, 300 Ark.

502, 780 S.W.2d 531 (1989); *Tedford, et al.* v. *Mears & Scott*, 258 Ark. 450, 526 S.W.2d 1 (1975); *Mackey* v. *McDonald*, 255 Ark. 978, 504 S.W.2d 726 (1974). We have written, "the remotest effect upon the taxpayer concerning any unlawful act by a tax supported program or institution may be enjoined under Article 16, Section 13, of the Arkansas Constitution." *Starnes* v. *Sadler*, 237 Ark. 325, 372 S.W.2d 585 (1963). Our refusal to follow those cases in this instance is perhaps the ultimate nit pick.

The majority relies on *Schuman* v. *Ouachita County*, 218 Ark. 46, 234 S.W.2d 42 (1950), and *Beard* v. *Wilcockson*, 184 Ark. 349, 42 S.W.2d 557(1931), for the proposition that a flaw in the tax assessment or collection procedure will not make the exaction itself illegal. The case now before us hardly involves a mere collection or procedural flaw, and the *Schuman* and *Beard* cases are irrelevant.

In the *Schuman* case the Court recognized a property tax debt existed, and the sole defect was in the procedure used by the county in recording mineral interest ownership and in collection of the appropriate taxes. In the *Beard* case, we held there was no illegal exaction because the taxes were not illegal or unauthorized but were only excessive in amount. I cannot conclude these cases have anything to do with an attempt to collect a tax from one who is not even the taxpayer contemplated by the law.

The majority also states that when the taxpayer only claims it is not the person or entity responsible for paying the taxes under law, no illegal exaction is presented, relying on *Hardin* v. *Guatney*, 204 Ark. 723, 164 S.W.2d 427 (1942). The *Hardin* case has been interpreted as meaning that only when the taxpayer claims "no tax due" could the *venue* of his own county be invoked. *See, e.g., Scurlock, Comm. of Rev.* v. *Yarbrough*, 224 Ark. 113, 271 S.W.2d 916 (1954). It cannot be interpreted as meaning when the taxpayer claims "no tax due" an illegal exaction is not present, as the majority suggests. The case no longer has any validity whatever, as the specific venue statute at issue in the *Hardin* case was repealed. We recognized that in *Taber* v. *Pledger*, 302 Ark. 484, 791 S.W.2d 361 (1990).

The majority also relies on *Taber* v. *Pledger, supra*, for the proposition that, because Couey did not claim the basic gross receipts tax unconstitutional, no illegal exaction is presented. In

the *Taber* case, the taxpayer claimed an exemption for gross receipts tax, and we held no illegal exaction existed. The taxpayer was not contending that the underlying tax was unconstitutional or void. If Couey were a taxpayer under the tax law as ADFA contended in its pleading prior to amendment, and if Couey were questioning the right to an exemption under the law, I would hold no illegal exaction had been stated. While Couey is not questioning the validity of an underlying tax law, the point is that there is no underlying tax law, and the attempt to collect this tax from Couey was wholly unauthorized.

It should be clear that in no manner do I condone the actions ADFA alleges Couey took in attempting to assist its customers in evading full taxation on transactions with Couey. The case did not reach the proof stage, however, and Couey's conduct is not at issue here. The issue rather is whether the actions of ADFA should be condoned in attempting to collect a tax from a citizen who had no liability for it whatever under the law. While there may have been proper remedies for ADFA to have pursued against Couey, they were not properly pursued, and it was correct for the Chancellor to find that an attempt to collect an unauthorized "tax" was an illegal exaction.

I respectfully dissent.

HOLT, C.J., and CORBIN, J., join in this dissent.