Doyle MASSONGILL *v.* COUNTY of SCOTT, Arkansas, Booster Hawkins, In His Capacity as Scott County Judge, the Scott County Quorum Court, and Jimmy Allen Storms, Billy Wayne Wagner, Tom Garrison, Randy Godfrey, Lloyd Hattabaugh, Joyce Holleman, Terry McMellon, Johnny Faye Owens, and Dwayne Wadkins, Individually and in Their Official Capacities As Members of the Scott County Quorum Court

96-992 947 S.W.2d 749

Supreme Court of Arkansas
Opinion delivered June 16, 1997

[Petition for rehearing denied September 11, 1997.]

100

*Oscar Stilley*, for appellant.

*Duncan & Rainwater, P.A.*, by: *Neil Chamberlin*, for appellees.

TOM GLAZE, Justice. Appellant Doyle Massongill filed this illegal-taxation class-action suit against appellants Scott County Judge and the Scott County Quorum Court members (hereinafter the County), challenging the validity of two ordinances, 92-3 and 95-3, as amended by 96-3 (hereinafter 96-3). Ordinance 92-3 was enacted on January 13, 1992, and it provided for a solid-waste management program for the County and established a solid-waste collection and disposal fee for households and businesses located in the County. Ordinance 96-3 was enacted on January 3, 1996, and it provided Quorum Court members with health insurance benefits with the expressed purpose to compensate them for rendering judicial duties, such as performing marriages. Massongill filed a motion for summary judgment, and the County responded by filing its motion for partial summary judgment. The chancellor granted the County's motion, finding both ordinances valid, but concluded 92-3 had gone into effect too soon because its emergency clause was invalid. Massongill appealed.

Because the trial court's order appealed from was not final regarding Ordinance 92-3, this court granted the County's motion to dismiss Massongill's appeal. Afterwards, the parties appeared again before the chancellor, and upon stipulations entered into between the parties, the court entered a final order awarding a partial refund of fees illegally imposed by the County during the emergency period in which Ordinance 92-3 was unlawfully in effect. Massongill appeals now from the trial court's final order which upholds the validity of the text of both ordinances.

Massongill first questions Ordinance 92-3's validity contending it is an appropriation measure as defined under Ark. Code

Ann. § 14-14-907(a)(1987), and as such, went into effect immediately upon passage by the quorum court and approval of the county judge.[1] Massongill's argument continues that, because Ark. Code Ann. § 14-14-908(b) provides that an emergency ordinance cannot levy taxes, impose special property tax assessments, or impose a service rate, 92-3, as an appropriation measure which imposes a tax or service fee, must be declared illegal.

Massongill simply misreads § 14-14-907, which in pertinent part provides as follows:

(a)(1) Generally. *An appropriation ordinance* or amendment to an appropriation ordinance is defined as a measure by which the county quorum court *designates a particular fund or sets apart a specific portion of county revenue in the treasury, to be applied to some general object or expenditure* or to some individual purchase or expense of the county.

* * *

(3) *Appropriation measures* enacted by a quorum court *shall include the following categories of financial management*:

(A) *The levy of taxes* and special property tax assessments *as provided by law.*

(B) The enactment of specific appropriations by which a specified sum has been set apart in the treasury and devoted to the payment of a particular demand. Specific appropriations may be enacted through the adoption of an annual budget, a statement of estimated receipts and expenditures, in a manner prescribed by law.

* * *

(c) All appropriation ordinances or an amendment to an appropriation ordinance shall be designated "appropriation ordinance." (Emphasis added.)

---

[1] We note that both parties argue the other has failed to preserve specific points related to the appropriation-measure argument initially raised by Massongill below, but our review of the abstract reflects all matters now argued were sufficiently addressed at trial and may be considered and decided by us on appeal.

As defined in provision (a)(1) above, an appropriation measure in no way enacts a tax or imposes a fee; rather, it merely *designates* a particular fund *or sets apart* a specific portion of *county revenue to some expenditure or purchase* by the County. As is further made clear by § 14-14-907(a)(3)(A), an appropriation measure sets apart its levy of taxes and county revenues *as provided by law*. Ordinance 92-3's objective was not to set aside (or appropriate) county revenues for solid-waste-collection purposes; rather, it was enacted to achieve the two following goals: (1) the County would have its own solid waste collection service, and (2) would charge each household in the county a five-dollar fee for that service. Appropriately, 92-3 was not labeled or designated an appropriation measure because it was not one. § 14-14-907(c) *supra.*

Neither (as contended by Massongill) was the text of Ordinance 92-3, as a whole, invalid because its emergency clause was invalid. Although the County was prohibited under § 14-14-908(b) from imposing a tax or service fee by emergency ordinance, the County's error in adding an emergency clause to 92-3's enactment did not sound the ordinance's death knell. As the County points out, this court has consistently held that the failure of an emergency clause does not render the entire act (or in this case an ordinance) inoperative. *See Foster v. Graves*, 168 Ark. 1033, 275 S.W.2d 653 (1925). In *Beaumont v. Faubus*, 239 Ark. 801, 394 S.W.2d 478 (1965), this court stated that, in the situation of an invalid emergency clause, an act takes effect when it would have become effective without the clause. Here, Ark. Code Ann. § 14-14-905(e) provides a nonemergency ordinance becomes effective thirty calendar days after the ordinance's publication; therefore Ordinance 92-3 went into effect when that calendar period expired. As discussed earlier, in holding 92-3's emergency clause invalid, the chancellor properly refunded fees the county unlawfully charged residents during that illegal period.

Massongill further challenges 92-3's validity by arguing it created a monopoly in violation of Article 2, § 19, of the Arkansas

Constitution.[2] His argument is without merit. Massongill says that he can find no statute that gives the County the right to monopolize trash collection, and it is the County's duty to bring such authority to the court's attention. Of course, Massongill is wrong in attempting to place the burden on the County in this respect, because it is his burden, as appellant, to show error by citation of authority and convincing argument that the trial court erred.

■ Even so, Massongill's Article 2, § 19, argument still must fail. He does not attack the constitutionality of Ark. Code Ann. §§ 14-14-801(a) and (b) and -802(b)(1) and (2)(F)(ii), which respectively provide in pertinent part that quorum courts may levy taxes and appropriate public funds for expenses as prescribed by law, and they may by ordinance provide services to their citizens, including solid-waste collection and disposal services. *See also* § 8-6-212 (Supp. 1995). This statutory authority alone is sufficient to affirm the trial court's holding on this point, since Massongill does not suggest §§ 14-14-801 and -802 violate Article 2, § 19 of the Arkansas Constitution.

However, other reasons unravel Massongill's monopoly theory, as well. For example, in reading statutory provisions §§ 14-14-801 and -802 and Ordinance 92-3, we fail to find any language that grants the County a monopoly. Neither do we find any legal authority, and Massongill cites to none on point, that prevents a county from having the exclusive right to collect solid waste. The chancellor here held that Article 2, § 19, does not apply to a governing body, and in support of that holding, the County cites *No. Little Rock Transportation, Inc. v. The City of North Little Rock*, 207 Ark. 976, 184 S.W.2d 52 (1944), where this court declared an act unconstitutional because it granted an exclusive franchise or monopoly to a private cab company. Discussing this constitutional provision's history, this court, quoting from *Ex parte Levy*, 43 Ark. 42, said the following:

---

[2] § 19. Perpetuities and monopolies. Perpetuities and monopolies are contrary to the genius of a republic, and shall not be allowed; nor shall any hereditary emoluments, privileges or honors ever be granted or conferred in this State.

The monopolies which in England became so odious as to excite general opposition, and infuse a detestation which has been transmitted to the free States of America, were in the nature of exclusive privileges of trade, granted to favorites or purchasers from the crown, for the *enrichment of individuals* at the cost of the public. They were supported by no consideration of public good. (Emphasis added.)

 The County further relies on *Smith v. City of Springdale*, 291 Ark. 63, 722 S.W.2d 569 (1987).[3] There, the court, citing *Dreyfus v. Boone*, 88 Ark. 353, 114 S.W.2d 718 (1908), stated that monopolies are upheld when deemed necessary in executing a duty incumbent on city authorities or the legislature for the preservation of public health. *See also Geurin v. City of Little Rock*, 203 Ark. 103, 155 S.W.2d 719 (1941), and *cf. L & H Sanitation v. Lake City Sanitation*, 769 F.2d 517 (8th Cir. 1985). In sum, based on the arguments presented, we conclude Massongill's monopoly theory must fail.

 Lastly, Massongill submits 92-3 must be stricken because the County violated Arkansas's competitive bidding laws, particularly Ark. Code Ann. § 14-22-111 (1987). He states that the County rejected the low bid for solid-waste disposal submitted by a private company, and then improperly established its own service at a higher cost. In considering this argument, it is sufficient to say that § 14-22-111 did not require the County to accept the low bid; instead, it allows "contracts shall be awarded to the lowest responsible bidder" and permits that "any bid may be rejected." *See* § 14-22-111(a) and (b)(1). While perhaps unnecessary, the County justifies its actions at the bidding stage by explaining that eight bids had been taken and those bids averaged $157,802.31. The County explains its action was reasonable not only because the law authorized its rejection of all bids, but also because the county had subsequently provided trash-collection

---

[3] The *Smith* decision involved an ordinance granting a waste collection and disposal franchise to a private company. Although the *Smith* court found a city is authorized to enter into exclusive contracts for sanitation services, it reversed because there had never been competitive bidding as required by law.

services at the competitive cost of $169,000.00.[4] Also as a consideration for rejecting the earlier bids, the County pointed out that the low bid was $47,000.00 less than the second lowest bid and, as such, appeared questionable and inadequate. In conclusion, because we hold the County did not violate the state's competitive bidding laws, nor the other statutory and constitutional provisions argued by Massongill hereinabove, we affirm the trial court's decision upholding 92-3's validity.

We next turn to Massongill's challenge of county ordinance 96-3, which we find has merit. He premises his argument on Ark. Code Ann. § 14-14-1205(c) (Supp. 1995), and urges that the County Quorum Court's payment of health insurance benefits on behalf of its members amounts to illegal compensation. Section 1205(c) provides as follows:

> (c) JUSTICE OF THE PEACE AS COUNTY EMPLOYEE OR DEPUTY. No justice of the peace shall receive compensation as a county employee or deputy, *nor shall any justice receive compensation or expenses from funds* appropriated by the quorum court *for any services performed within the county, other than as provided by this subchapter.* (Emphasis added.)

The chancellor held § 14-14-1205(c) is inapplicable because the health insurance benefits involved here cannot be denoted compensation as that term is employed in § 14-14-1205. Furthermore, he expressed that he could find no legislation concerning the authorization of "fringe benefits" or prohibition of same to court members, and as a consequence, he believed such insurance coverage could be awarded members under the County's broad authority under § 1 of Amendment 55 to the Arkansas Constitution. That constitutional provision provides that a quorum court is authorized by the Arkansas Constitution to "exercise local legislative authority not denied by the Constitution or by law." Because the chancellor found no law against quorum court members having their insurance benefits paid by the County, he determined the County's Ordinance 96-3 providing such benefits to be valid. Specifically, the chancellor held that such benefits may be

---

[4] This cost was only $12,000.00 more than the average $157,802.00 amount of the eight bids earlier submitted.

given due solely to their "status" as quorum court members. We must disagree with the chancellor's reading of § 14-14-1205.

■ We again emphasize provision (c) of § 14-14-1205, which very clearly *precludes* quorum court members from receiving *compensation or expenses* from funds appropriated by the quorum court for any services performed within the County, *other than as provided by this subchapter.* (Emphasis supplied.) This subchapter dealing with personnel procedures specifically restricts or limits compensation and expenses to be provided quorum court members to that which is provided in § 14-14-1205 and other statutes in subchapter 12. Clearly, health insurance coverage is a County expense under 96-3, and cannot be made otherwise merely by labeling such coverage a "fringe benefit." Accordingly, Ordinance 96-3 and ones like it run contrary to Arkansas's applicable constitutional and statutory laws that specify and restrict the compensation and expenses that quorum court members and other county officials are entitled to receive. Because we conclude Ordinance 96-3 is illegal as being contrary to § 14-14-1205(c) and to the meaning of § 1 of Amendment 55, we reverse and remand this cause with directions to enjoin the Scott County Quorum Court from paying health insurance benefits in their behalf and order such payments to be repaid. Because the chancellor upheld 96-3, the parties were precluded from addressing any refund payments, we remand with directions that they be allowed to do so in a manner consistent with this opinion. *Cf. Tedford v. Mears,* 258 Ark. 450, 526 S.W.2d 1 (1975).

We affirm the trial court's decision upholding the validity of Ordinance 92.3 and reverse its holding concerning Ordinance 96.3 as discussed immediately above.