The Honorable Janice A. Judy State Representative 202 West Maple Fayetteville, Arkansas 72701-4132
Dear Representative Judy:
You have requested an Attorney General opinion concerning the bidding process for municipalities in Arkansas.
You have presented the following questions:
 (1) Given the requirement for competitive bidding under A.C.A. § 14-58-303, can an Arkansas municipality exclude an individual or firm from bidding on the purchase of supplies, materials, equipment, and for contracts for work and labor? If so, under what circumstances would an exclusion be valid?
 (2) Given the bidding requirements of A.C.A. § 22-9-203, can an Arkansas municipality exclude an individual or firm from bidding on the construction contracts for public improvements? If so, under what circumstance might an exclusion be valid?
 (3) Given the noncompetitive nature of the negotiation for professional service contracts, can an Arkansas municipality exclude an individual or firm from negotiating for professional service contracts for the city? If so, under what circumstance might an exclusion be valid?
 (4) If it is valid to exclude an individual or firm from these contracts, what is the correct procedure a municipality should follow in order to make the exclusion valid?
RESPONSE
Question 1 — Given the requirement for competitive bidding under A.C.A.§ 14-58-303, can an Arkansas municipality exclude an individual or firmfrom bidding on the purchase of supplies, materials, equipment, and forcontracts for work and labor? If so, under what circumstances would anexclusion be valid?
It is my opinion that an Arkansas municipality cannot exclude an individual or firm from bidding. However, as explained more fully below, municipalities can reject any bid and are not bound to accept a bid simply because it is the lowest bid.
As you note, the bidding requirement for municipalities is set forth in A.C.A. § 14-58-303, as follows:
 (a) In a city of the first class, the mayor or his duly authorized representative shall have exclusive power and responsibility to make purchases of all supplies, apparatus, equipment, materials, and other things requisite for public purposes in and for the city and to make all necessary contracts for work or labor to be done or material or other necessary things to be furnished for the benefit of the city, or in carrying out any work or undertaking of a public nature therein.
 (b)(1) The municipal governing body shall provide, by ordinance, the procedure for making all purchases which do not exceed the sum of ten thousand dollars ($10,000).
 (2)(A)(i) Where the amount of expenditure for any purpose or contract exceeds the sum of ten thousand dollars ($10,000), the mayor or his duly authorized representative shall invite competitive bidding thereon by legal advertisement in any local newspaper.
 (ii) Bids received pursuant to the advertisement shall be opened and read on the date set for receiving the bids in the presence of the mayor or his duly authorized representative.
 (iii) The mayor or his duly authorized representative shall have exclusive power to award the bid to the lowest responsible bidder, but may reject any and all bids received.
 (B) The governing body, by ordinance, may waive the requirements of competitive bidding in exceptional situations where this procedure is deemed not feasible or practical.
A.C.A. § 14-58-303.[1]
Bidding requirements for certain municipal contracts are also set forth in A.C.A. § 22-9-203, which provides in pertinent part:
 (a) No contract providing for the making of major repairs or alterations, for the erection of buildings or other structures or for making other permanent improvements shall be entered into by the state or any agency thereof, any county, municipality, school district, or other local taxing unit with any contractor in instances where all estimated costs of the work shall exceed the sum of ten thousand dollars ($10,000) for counties and municipalities and the sum of fifty thousand dollars ($50,000) for any school district unless:
* * *
 (2) Any county, municipality, school district, or other local taxing unit shall have first published notice of its intention to receive bids one (1) time each week for not less than two (2) consecutive weeks in a newspaper of general circulation published in the county in which the proposed improvements are to be made or in a trade journal reaching the construction industry.
* * *
 (d) On the date and time fixed in the notice, the board, commission, officer, or other authority in which or in whom authority is vested to award contracts shall open and compare the bids and thereafter award the contract to the lowest responsible bidder, but only if it is the opinion of the authority that the best interests of the taxing unit would be served thereby.
A.C.A. § 22-9-203.
Neither of the above-quoted statutes provides authority for excluding any individual or firm from the bidding process. Both appear to contemplate that the bidding process is to be open to all bidders. I am aware of no other source of law that provides such authority. Indeed, the underlying purpose of requiring a bidding process is to avoid the exclusion of qualified providers from access to municipal contracts. Moreover, the practice of excluding individuals and firms from the bidding process could, depending on the specific facts under which such exclusion takes place, give rise to claims based upon the First Amendment to the U.S. Constitution or state or federal anti-trust laws, see National Societyof Professional Engineers, Petitioner, v. United States, 435 U.S. 679
(1978), or the common law doctrine of restraint of trade.
Nevertheless, both of the above-quoted statutes make specific provision for rejecting bids that are unacceptable. See A.C.A. §14-58-303(b)(2)(A)(iii). While municipalities and firms may not, in my opinion, exclude individuals and firms from the bidding process, they may decline to accept any bid, even the lowest bid, if they do so in good faith. Although the Arkansas Supreme Court has not addressed the precise question that you have posed, it has held that municipalities may use their discretion to consider various factors other than amounts in evaluating the acceptability of bids.
The court has consistently interpreted the term "lowest responsible bidder," as used in statutory language, broadly enough to allow the deciding body to reject the lowest bidder (as well as other bidders) on the grounds of factors other than the amounts of the bids. Indeed, the court has made the general observation that "the phrase `lowest responsible bidder' in a statute providing for competitive bids before awarding contracts for certain public improvements implies skill, judgment and integrity necessary to a faithful performance of the contract, as well as sufficient financial resources and ability."Fletcher v. Cherry, 207 Ark. 650, 651, 182 S.W.2d 211 (1944), quotingWilliams v. City of Topeka, et al., 85 Kas. 857, 118 P. 864, 38 L.R.A., N.S., 672.
The Fletcher court also noted that "where a statute requires municipal contracts to be let to the `lowest responsible bidder' the duty of the officer letting the contract is not merely ministerial, but partakes of a judicial character, requiring the exercise of discretion." Fletcher,supra, 207 Ark. at 651.
The court most recently considered this issue in Massongill v. County ofScott, 329 Ark. 98, 947 S.W.2d 749 (1997). In that case, it was argued that a county had unlawfully rejected the lowest bid for solid waste disposal, in violation of A.C.A. § 14-22-111. That statute, like A.C.A. § 14-58-303 and A.C.A. § 22-9-203, required the county to award the contract to the "lowest responsible bidder," but (also like A.C.A. §14-58-303 and A.C.A. § 22-9-203) allowed the county to reject all bids. The court held that this statutory language did not require the county to accept the lowest bid.
Similarly, in Conway Corp. v. Construction Eng'rs., 300 Ark. 225,782 S.W.2d 36 (1989), the lowest bidder for a city construction contract sued the Conway Corporation, the non-profit organization that operated the City of Conway's utilities, for rejecting its low bid, and awarding the contract to a higher bidder. The court found that the case was governed by A.C.A. § 22-9-203 (quoted above), and that under that statute, the Conway Corporation" had the discretion to reject [the lowest bid] so long as the rejection was for good cause and in good faith." Conway Corp.,supra, 300 Ark. at 231, citing Worth James Constr. Co. v. JacksonvilleWater Comm'n, 267 Ark. 214, 590 S.W.2d 256 (1979).
These decisions of the Arkansas Supreme Court clearly indicate that municipalities have relatively wide discretion in evaluating bids and in choosing the individuals and firms with whom they want to do business. This conclusion is bolstered by the fact that A.C.A. § 14-58-303(b)(2)(B) explicitly allows municipalities to waive the bidding requirement altogether in certain situations. Again, that section states: "The governing body, by ordinance, may waive the requirements of competitive bidding in exceptional situations where this procedure is deemed not feasible or practical."
For these reasons, I conclude that although municipalities may not exclude individuals or firms from the bidding process, they do have considerable control over the individuals and firms with which they choose to contract.
Question 2 — Given the bidding requirements of A.C.A. § 22-9-203, can anArkansas municipality exclude an individual or firm from bidding on theconstruction contracts for public improvements? If so, under whatcircumstance might an exclusion be valid?
As indicated in response to Question 1, it is my opinion that municipalities in Arkansas may not exclude individuals or firms from the bidding procedures that are required under the law, including those required by A.C.A. § 22-9-203. See discussion under Question 1.
Question 3 — Given the noncompetitive nature of the negotiation forprofessional service contracts, can an Arkansas municipality exclude anindividual or firm from negotiating for professional service contractsfor the city? If so, under what circumstance might an exclusion bevalid?
It is my opinion that Arkansas law gives municipalities relatively wide leeway in choosing not to negotiate with particular firms or individuals for professional services.[2] However, the law sets forth certain guidelines and requirements with which cities must comply in determining the firms or individuals with which it will negotiate for professional services. Those requirements are stated as follows:
19-11-802. Annual statements of qualifications and performance data —
 (a) In the procurement of professional services, a political subdivision which utilizes such services may encourage firms engaged in the lawful practice of these professions to submit annual statements of qualifications and performance data to the political subdivision or may request such information as needed for a particular public project.
 (b) The political subdivision shall evaluate current statements of qualifications and performance data of firms on file or may request such information as needed for a particular public project whenever a project requiring professional services is proposed.
 (c) The political subdivision shall not use competitive bidding for the procurement of professional services.
19-11-803. Evaluation of qualifications.
 In evaluating the qualifications of each firm, the political subdivision shall consider:
 (1) The specialized experience and technical competence of the firm with respect to the type of professional services required;
 (2) The capacity and capability of the firm to perform the work in question, including specialized services, within the time limitations fixed for the completion of the project;
 (3) The past record of performance of the firm with respect to such factors as control of costs, quality of work, and ability to meet schedules and deadlines; and
 (4) The firm's proximity to and familiarity with the area in which the project is located.
19-11-804. Selection.
 The political subdivision shall select three (3) qualified firms. The political subdivision shall then select the firm considered the best-qualified and capable of performing the desired work and negotiate a contract for the project with the firm selected.
19-11-805. Negotiation of contracts.
 (a) For the basis of negotiations, the political subdivisions and the selected firm shall jointly prepare a detailed, written description of the scope of the proposed services.
 (b) If the political subdivision is unable to negotiate a satisfactory contract with the firm selected, negotiations with that firm shall be terminated. The political subdivision shall then undertake negotiations with another of the qualified firms selected. If there is a failing of accord with the second firm, negotiations with such firm shall be terminated. The political subdivision shall undertake negotiations with the third qualified firm.
 (c) If the political subdivision is unable to negotiate a contract with any of the selected firms, the agency shall reevaluate the necessary professional services, including the scope and reasonable fee requirements, again compile a list of qualified firms, and proceed in accordance with the provisions of this subchapter.
 (d) When unable to negotiate a contract for construction management, a public school district shall also perform a reevaluation of services in accordance with subsection (c) of this section.
The above-quoted statutory guidelines and requirements for negotiating for the provision of professional services explicitly authorize municipalities to limit the individuals and firms with whom they will negotiate. However, in limiting their negotiations in this manner, municipalities may not act arbitrarily, but must comply with the other administrative requirements that are set forth in these statutes. It should be noted that the Arkansas Supreme Court has specifically held that it is a violation of these laws for a municipality to base its selection upon price considerations. See Graham v. Forrest City HousingAuthority, 304 Ark. 632, 803 S.W.2d 923 (1991).
Question 4 — If it is valid to exclude an individual or firm from thesecontacts, what is the correct procedure a municipality should follow inorder to make the exclusion valid?
See response to Question 3.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh
[1] You have not indicated the class of the city with which you are concerned. It should be noted that the Arkansas Supreme Court recently held that the provisions of A.C.A. § 14-58-303 do not apply to cities of the second class, but rather only to cities of the first class. See Burkev. Elmore, 341 Ark. 129, ___ S.W.3d ___ (2000).
[2] With regard to the manner in which cities define the term "professional services," the following provision should be noted:
19-11-806. Cities of the first or second class — Ordinances.
(a)(1) Any city of the first or second class, or any incorporated town, that defines a professional service pursuant to this subchapter must do so by ordinance.
(2) Any ordinances that define a professional service must be read publicly at two (2) regularly scheduled meetings.
(3) No ordinance that defines a professional service may be adopted with an emergency clause.
(b)(1) In addition, in a city of the first or second class or an incorporated town which has delegated the operation of its water or sewer services to a board of public utilities or commission, it shall be the responsibility of that board or commission to define a professional service as used in this subchapter.
(2)(A) It shall be defined by a motion or resolution of the board or commission.
(B) The motion or resolution defining a professional service shall be read publicly at two (2) regularly scheduled meetings and shall be effective thirty (30) days after its second reading and passage.