The Honorable Mike Medlock Prosecuting Attorney Twenty-First Judicial District 100 South 4th Street, Room 3 Van Buren, AR 72956
Dear Mr. Medlock:
You have requested an Attorney General opinion concerning two county ordinances, both of which govern the ownership of "carnivorous felines." Ordinance 26-2000 was adopted by the Crawford County Quorum Court, and Ordinance 29-2000 is a proposed ordinance. Your questions are as follows:
 (1) Ordinance No. 26-2000 was submitted and voted on at a special meeting. The rules were suspended by a unanimous vote. On final reading, six of the eleven members of the quorum court voted for passage of the ordinance. Since this ordinance contains an emergency clause, did the ordinance pass without the emergency clause or did the ordinance fail entirely?
 (2) Would Ordinance No. 29-2000 be valid under present state and federal law?
RESPONSE
Question 1 — Ordinance No. 26-2000 was submitted and voted on at aspecial meeting. The rules were suspended by a unanimous vote. On finalreading, six of the eleven members of the quorum court voted for passageof the ordinance. Since this ordinance contains an emergency clause, didthe ordinance pass without the emergency clause or did the ordinance failentirely?
It is my opinion that Ordinance No. 26-2000 passed without the emergency clause. It therefore was validly passed but did not go into effect immediately.
County "emergency ordinances" must be passed by a two-thirds majority of the quorum court, A.C.A. § 14-14-908(e), whereas non-emergency ordinances require only a simple majority for passage. A.C.A. § 14-14-904(h).
Although the Arkansas Supreme Court has not addressed a situation that is directly analogous to the one you have described (i.e., a situation in which an ordinance containing an emergency clause received only a simple majority of votes), it has nevertheless provided guidance for analyzing situations in which the emergency clause is flawed in some way. That guidance is found in a case involving a flawed emergency clause:Massongill v. County of Scott, 329 Ark. 98, 947 S.W.2d 749 (1997). In that case, a county quorum court erroneously added an emergency clause to an ordinance that was prohibited by law from being passed as an emergency ordinance. The appellant challenging the ordinance argued that the entire ordinance was invalid because the emergency clause was invalid. The court rejected this argument, and treated the ordinance as though it simply had not contained an emergency clause, stating:
 Neither (as contended by Massongill) was the text of Ordinance 92-3, as a whole, invalid because its emergency clause was invalid. Although the County was prohibited under § 14-14-908(b) from imposing a tax or service fee by emergency ordinance, the County's error in adding an emergency clause to 92-3's enactment did not sound the ordinance's death knell. As the County points out, this court has consistently held that the failure of an emergency clause does not render the entire act (or in this case an ordinance) inoperative. See Foster v. Graves, 168 Ark. 1033, 275 S.W.2d 653 (1925). In Beaumont v. Faubus, 239 Ark. 801, 394 S.W.2d 478 (1965), this court stated that, in the situation of an invalid emergency clause, an act takes effect when it would have become effective without the clause.
Massongill, 329 Ark. at 103.
I believe that if a court followed the reasoning of Massongill (and of the authorities cited by the Massongill court) in considering the situation that you have described, it would simply treat Ordinance No. 26-2000 as though it had not contained an emergency clause. The result of such a holding would be that Ordinance No. 26-2000 would not be deemed invalid simply because its emergency clause failed. Rather, it would be deemed to have been a non-emergency ordinance that passed with a simple majority of votes.
I reiterate that this precise question has never been presented to the Arkansas Supreme Court. Nevertheless, I believe that my conclusion is consistent with the reasoning utilized by the court in deciding similar questions.
Question 2 — Would Ordinance No. 29-2000 be valid under present state andfederal law?
I am aware of no state or federal law with which the language of Ordinance No. 29-2000 directly conflicts on its face.
Under the Arkansas Constitution, counties, acting through their quorum courts, are empowered to "exercise legislative authority not denied by the Constitution or by law." Ark. Const., Am. 55, § 1(a). Accord, A.C.A. § 14-14-801(a). State law lists various powers that are expressly granted to counties, A.C.A. § 14-14-801, various powers that are expressly denied to counties A.C.A. § 14-14-805, various powers that require state delegation, A.C.A. § 14-14-806, and various powers that are explicitly restricted by state law, A.C.A. § 14-14-807. In addition, state law provides that where counties are authorized to regulate an area that is also subject to state regulation, they may only regulate that area by enacting ordinances that are at least as stringent as state regulation. A.C.A. § 14-14-808; A.C.A. § 14-14-809. If state regulation in that area prescribes a single standard of conduct, the county's regulation must prescribe identical conduct. A.C.A. § 14-14-809(b).
It is my opinion that counties do have the authority to regulate wild animals, but that their authority to do so is concurrent with state and federal authority to do so. Counties are explicitly authorized by state law to "secure freedom from dangerous . . . activities." A.C.A. §14-14-801(b)(3). This statement of authority is certainly broad enough to encompass the regulation of wild animals. Moreover, the regulation of wild animals is not among the activities that are expressly denied to counties in A.C.A. § 14-14-805. For these reasons, I conclude that counties may regulate wild animals. However, the state and federal governments also have (and do exercise) authority to regulate wild animals. For example, the U.S. Congress, pursuant to its power to regulate interstate commerce (U.S. Const. art. I, § 8, cl. 3), enacted the federal Animal Welfare Act (7 U.S.C. § 2131-2157), which regulates the transportation, purchase, sale, housing, care, handling, and treatment of animals. Under the authority of this Act, the U.S. Department of Agriculture (USDA) regulates the licensing of dealers and exhibitors of wild or exotic animals. See 7 U.S.C. § 2133 and USDA regulations.
State government also has regulatory authority concerning wild animals. Under the Arkansas Constitution, the Game and Fish Commission is charged with the responsibility for the "control, management, restoration, conservation and regulation of birds, fish, game and wildlife resources of the State, including hatcheries, sanctuaries, refuges, reservations and all property now owned, or used for said purposes and the acquisition and establishment of same[.]" Ark. Const., Am. 35, § 1. The Arkansas Supreme Court has interpreted the Game and Fish Commission's authority to be broad and complete, including the power to promulgate rules and regulations for carrying out its purpose. See Crow v. State,56 Ark. App. 100, 938 S.W.2d 874 (1997); Chaffin v. Arkansas Game and FishCommission, 296 Ark. 431, 757 S.W.2d 950 (1988).
Because both the federal and state governments have regulatory authority concerning wild animals, any county ordinance that regulates wild animals must be consistent with all applicable federal or state regulations. U.S. Const., Art. 6, § 2 (Supremacy Clause);[1] A.C.A. § 14-14-808, -809. I find nothing on the face of Ordinance No. 29-2000 that would indicate that it is inconsistent with any existing federal or state regulation.
It should be noted, however, that as with all legislation, the ordinance could be applied in a manner that would be problematic. Problems arising out of the application of the ordinance would, of course, arise out of the facts of each individual case, and would therefore have to be evaluated on a case-by-case basis by local counsel.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh
[1] At least one federal court has entertained a Supremacy Clause challenge to a municipal ordinance that prohibited the possession of wild animals within city limits. In DeHart v. Town of Austin, Ind.,39 F.3d 718 (7th Cir. 1994), the court rejected the challenge, stating:
 [I]t is clear that the Animal Welfare Act does not evince an intent to preempt state or local regulation of animal or public welfare. Indeed, the Animal Welfare Act expressly contemplates state and local regulation of animals. For example, § 2145(b) declares: "The Secretary is authorized to cooperate with the officials of the various States or political subdivisions thereof in carrying out the purposes of this chapter and of any State, local, or municipal legislation or ordinance on the same subject." 7 U.S.C. § 2145(b). In addition, § 2143(a)(8) provides that the statutory authority delegated to the Secretary of Agriculture to" promulgate standards to govern the humane handling, care, treatment, and transportation of animals by dealers, research facilities, and exhibitors," 7 U.S.C. S 2143(a)(1), "shall not prohibit any State (or a political subdivision of such State) from promulgating standards in addition to those standards promulgated by the Secretary." 7 U.S.C. S 2143(a)(8).
Id. at 722. See also Phillips V. Town Of Oak Grove, 333 Ark. 183,968 S.W.2d 600 (1998); Holt v. City Of Maumelle, 307 Ark. 115,817 S.W.2d 208 (1991) (recognizing police power of municipalities to regulate animals).