The Honorable Randy Laverty State Senator Post Office Box 165 Jasper, Arkansas 72641
Dear Senator Laverty:
I am writing in response to your request for my opinion on two questions you have submitted on behalf of Boone County Justice of the Peace Dan Roberts. In correspondence to you, Mr. Roberts recited the following factual background:
 Last year, the city of Harrison awarded a contract to pick up trash and recyclables. Methwin Sanitation was the successful bidder. The problem arises in connection with the pick up and delivery of recyclable materials to a recycling facility.
 The contract states: ":Exclusive Right. The City, as grantor, grants the Contractor, as grantee, the exclusive right during the term of this Agreement to collect and transfer recyclable materials and solid wastes from business and residential units located within the service area as defined in Service, Operation, and Performance, Section III. The City warrants that it has the authority to grant such an exclusive right as described in this Agreement and as delegated to it by ACA § 8-6-211."
 Another entity has made arrangements with several businesses to pick up certain recyclables (mainly cardboard) and dispose of them[;] he cites as the authority ACA § 8-6-720(3)(e)(1) [sic: "A.C.A. § 8-6-720(e)(1)"] which states "A board shall not prevent a person generating or collecting recyclable materials from delivering the recyclable materials to a recycling facility of the generator's or the collector's choice."
The Harrison City Attorney has supplied me with the following additional information:
 The City of Harrison has a contract with METHVIN SANITATION which exclusively franchises METHVIN to be the only authorized carrier to provide pick-up and disposal of all trash and recyclables, excepting only baled cardboard an[d] hazardous wastes. METHVIN had been picking up the un-baled cardboard furnished by the same owner and provided a special dumpster at the back door of the local business. When METHVIN learned that TOM-BAR was providing a trailer and towing it, METHVIN accused TOM-BAR of violating METHVIN'S exclusive trash and recyclables hauling contract with the City. METHVIN acknowledges that TOM-BAR has the right to buy cardboard that is delivered to its place of business, but says that by hooking onto the trailer TOM-BAR is hauling a recyclable product in violation of METHVIN'S exclusive contract. . . . TOM-BAR has threatened to sue the City to remove the word "exclusive" from the Contract with METHVIN. TOM-BAR says the Contract serves to take a "business right" away from TOM-BAR and they are afraid it will be expanded to keep them from buying and hauling other commodities such as scrap aluminum, industry metal scrap, old appliances and equipment, etc. that they have been doing for many years.
I am informed that the business generating the cardboard at issue is the Harrison Daily Times newspaper.
Against this backdrop, you have posed the following two questions:
 1. Does the City have the right to issue a contract with an" Exclusive Right" clause in it?
 2. If it does have that right, would not the successful contractor with that "Exclusive Right" be the collector referred to in ACA § 8-6-720[(e)(1)]?
RESPONSE
In my opinion, the answer to your first question is "yes." A.C.A. §§ 8-6-211(a) and -211(e). I believe the answer to your second question is "no," inasmuch as A.C.A. § 8-6-720(e)(1) relates to collections in a regional waste management district, not to collections in a municipal district of the sort authorized in A.C.A. § 8-6-201 et seq.
Question 1: Does the City have the right to issue a contractwith an "Exclusive Right" clause in it?
In my opinion, the answer to this question is "yes," given that the legislature has directly afforded cities such authority.
Subsection 8-6-211(a) (Supp. 2005) of the Arkansas Code, which is contained in the Arkansas Solid Waste Management Act, provides:
 All municipalities shall provide a solid waste management system which will adequately provide for the collection and disposal of all solid wastes generated or existing within the incorporated limits of the municipality or in the area to be served and in accordance with the rules, regulations, and orders of the Arkansas Pollution Control and Ecology Commission. The governing body of the municipality may enter into agreements with one (1) or more other municipalities, counties, a regional solid waste management district, private persons or trusts, or with any combination thereof, to provide a solid waste management system, or any part of a system,
for the municipality, but the agreement shall not relieve the parties of their responsibilities under this subchapter.
(Emphasis added.) Subsection 8-6-203(8) (Repl. 2000) defines the term "solid waste management system" as follows:
 "Solid waste management system" means the entire process of source reduction, storage, collection, transportation, processing, waste minimization, recycling, and disposal of solid wastes by any person engaging in the process as a business or by any municipality, authority, trust, county, or by any combination thereof[.]
(Emphasis added.) Subsection 8-6-211(e) further provides in pertinent part:
 The governing body of a municipality shall have the right to establish policies for and enact laws concerning . . . the prohibition of the diverting of recyclable materials by persons other than the generator or collector of the recyclable material. . . .
As reflected in these passages, the legislature has authorized any municipality exclusively to contract with a single private individual for the provision of recycling systems, foreclosing any other individual from engaging in the activity.
With regard to the legality of such a monopolistic arrangement, one of my predecessors offered the following summary:
 [M]unicipalities in Arkansas may lawfully award an exclusive franchise with respect to the provision of certain services including, generally, solid waste management and disposal services. See L H Sanitation v. Lake City Sanitation, 769 F.2d 517
(8th Cir. 1985), citing Geurin v. City of Little Rock, 203 Ark. 103, 155 S.W.2d 719 (1941).
Ark. Op. Att'y Gen. No. 99-140; accord Ark. Op. Att'y Gen. No.95-230. Compare Waste Management of Arkansas, Inc. v. Roll OffService, Inc., 66 Ark. App. 343, ___ S.W.3d ___ (2004) (affirming jury verdict awarding damages for intentional interference with contractual relations when competitor courted customers of business awarded an exclusive franchise for refuse disposal in Rogers, Lowell and Elkins); Massongill v. County ofScott, 329 Ark. 98, 105, 947 S.W.2d 749 (1997) ("[M]onopolies are upheld when deemed necessary in executing a duty incumbent on city authorities or the legislature for the preservation of public health." (citing Smith v. City of Springdale,291 Ark. 63, 722 S.W.2d 569 (1987) and Dreyfus v. Boone, 88 Ark. 353,114 S.W.2d 718 (1908))).
In L H Sanitation, the court offered the following remarks regarding the propriety of a municipality's awarding an exclusive franchise:
 The Arkansas Solid Waste Management Act does not expressly grant municipalities the power to grant exclusive solid waste disposal franchises. However, we agree with the district court that the legislative intent to displace competition can be inferred from the statutory scheme because it is a "necessary and reasonable consequence of engaging in the authorized activity." Gold Cross Ambulance v. City of Kansas City, 705 F.2d at 1013. Under the Arkansas Solid Waste Management Act municipalities are granted broad authority to regulate solid waste management and to enter into agreements to provide for solid waste management and disposal. Ark.Stat.Ann. § 82-2705. Regulation of solid waste management is one of the traditional public health functions of local government, and Arkansas law recognizes the validity of a municipal grant of a private monopoly in solid waste disposal. See Geurin v. City of Little Rock, 203 Ark. 103, 105-06, 155 S.W.2d 719, 720 (1941) (sewers); Ark.Stat.Ann. § 19-2319 (Supp. 1983) (exclusive agreements for providing public utilities). It certainly cannot be said that Arkansas has adopted a policy of indifference or "mere neutrality respecting the municipal actions challenged as anticompetitive." Community Communications Co. v. City of Boulder, 455 U.S. at 55, 102 S.Ct. at 843. Rather, we agree that the legislative scheme contemplates displacing competition with regulation in the area of solid waste management and disposal. See Central Iowa Refuse Systems, Inc. v. Des Moines Metropolitan Solid Waste Agency, 715 F.2d at 426-28.
769 F.2d at 522. As this passage suggests, when authorized by the state, a municipality may enjoy the state's immunity from the application of antitrust laws. As the court further explained:
 ". . . [Eighth Circuit] cases analyzed the state action immunity issue in two steps: First, the state legislature must have authorized the challenged municipal activity. Second, the legislature must have intended to displace competition." Scott v. City of Sioux City, 736 F.2d at 1211. "[T]he state policy to dispose competition can be inferred `if the challenged restraint is a necessary and reasonable consequence of engaging in the authorized activity.'" Id., citing Gold Cross Ambulance v. City of Kansas City, 705 F.2d at 1013; see also City of Lafayette v. Louisiana Power Light Co., 435 U.S. at 415, 98 S.Ct. at 1138.
769 F.2d at 521. As further reflected in the above passage, the court concluded that anticompetitive regulation by a municipality in the area of solid waste management is indeed "necessary and reasonable."
Question 2: If it does have that right, would not the successfulcontractor with that "Exclusive Right" be the collector referredto in ACA § 8-6-720[(e)(1)]?
In my opinion, the answer to this question is "no" because A.C.A. § 8-6-720(e)(1) is inapplicable. The "collector" referenced in that statute serves a regional, not a municipal, waste management system. However, I must stress that this conclusion leaves unaddressed the factual questions of whether the City of Harrison has, in fact, entered into an exclusive contract and whether a tension exists between the city's contract and the contract between the Harrison Daily Times and the contractor who disposes of its cardboard. Such contract questions must be left to the city attorney in the first instance and to the courts in the event of litigation.
Mr. Roberts indicates in his correspondence to you that the City of Harrison has warranted in its contract with Methvin that "it has the authority to grant such an exclusive right as described in this Agreement and as delegated to it by ACA § 8-6-211." My review of the contract reveals that a five-member advisory board serves to assist the parties in implementing their agreement, which establishes a municipal waste management system as authorized in subchapter 2, chapter 6, title 8 of the Code.
By contrast, subchapter 7, chapter 6, title 8 of the Code deals exclusively with regional solid waste management districts and boards. Subsection 8-6-720(e) (Supp. 2005) provides as follows:
 (1) A board shall not prevent a person generating or collecting recyclable materials from delivering the recyclable materials to a recycling facility of the generator's or collector's choice.
 (2) However, no person shall divert to personal use or commercial purpose any recyclable materials placed in a container as a part of a regional recycling program without the consent of the generator or the collector.
The "board" referenced in this statute is not a local advisory board of the sort formed pursuant to the agreement between Methvin and the City of Harrison; rather, it is a regional solid waste management board that oversees waste management operations in one of the eight regional solid waste management district created pursuant to Acts 1989, No. 870. See A.C.A. § 8-6-703
(Supp. 2005). The proscription set forth in A.C.A. §8-6-720(e)(1) thus applies only to a person or business generating or collecting recyclables pursuant to a regional solid waste management program.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh